GB98LOBC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4             v.                          15 Cr. 174 (LGS)

5   FABIO PORFIRIO LOBO,

6             Defendant.

7   ------------------------------x

8                                    November 9, 2016
                                     5:30 p.m.
9
    Before:
10
                   HON. LORNA G. SCHOFIELD
11
                                     District Judge
12
                         APPEARANCES
13
    PREET BHARARA
14        United States Attorney for the
          Southern District of New York
15  MATTHEW J. LAROCHE
          Assistant United States Attorney
16
    RETURETA & WASSEM, PLLC
17        Attorneys for Defendant
    MANUEL J. RETURETA
18

19  Also present:  DAVID MINTZ, Spanish Language Interpreter

20

21

22

23

24

25

GB98LOBC

1          (Case called)

2          THE DEPUTY CLERK:  Counsel, please state your name for

3     the record.

4          MR. LAROCHE:  Good evening, your Honor.  Matt Laroche

5     for the government.

6          THE COURT:  Good evening.

7          MR. RETURETA:  Good evening, your Honor.  Manuel

8     Retureta on behalf of Mr. Lobo, who is present.

9          THE COURT:  Hello, Mr. Lobo.

10          I see we have a Spanish interpreter.

11          Let me know, Mr. Lobo, if you have any trouble

12     understanding the interpreter.

13          And, Mr. Interpreter, please let me know if you have

14     any trouble understanding or hearing Mr. Lobo.

15          So, Mr. Laroche, will you just remind me where we are?

16          MR. LAROCHE:  Yes, your Honor.  We were supposed to

17     have a sentencing scheduled in this matter.  I think the

18     parties have some factual disagreements that are going to

19     require a Fatico hearing.  With respect to that hearing, the

20     government thinks it will take about three days.

21          THE COURT:  I saw that, and I couldn't believe it.

22          MR. LAROCHE:  The reason for the length is we plan to

23     call at least one cooperating witness, and we expect his

24     testimony to take at least a day.  There is also a significant

25     amount of recordings, both audio and video recordings, that we

GB98LOBC

1    would want to introduce into evidence.  I would say we would do

2    our best to get it done in two days.  I am just trying to be

3    conservative with the time.

4              THE COURT:  You might as well go to trial at that

5    point, although I know we already have a guilty plea.

6              So what is the factual issue as it impacts sentencing?

7              MR. LAROCHE:  I think it's the extent of his

8    involvement.  There's a couple of issues.  One is the quantity

9    of drugs.  The government is submitting that the quantity was

10   over 450 kilograms, which puts the base offense level at, I

11   believe, 38.  There is also several enhancements that the

12   government thinks are appropriate.

13             THE COURT:  Let's talk about these things one at a

14   time.

15             So quantity of drugs, I would think -- and if you

16   could just step that way a little bit, that way I can see Mr.

17   Retureta also -- would not be something that would be in

18   dispute.  So what is the dispute?

19             MR. LAROCHE:  I will defer to Mr. Retureta.

20             THE COURT:  I will hear him.

21             MR. RETURETA:  Your Honor, the dispute deals with how

22   far we carry my client's conduct with the large-scale operation

23   that he was connected to.  The large-scale operation is an

24   organization known as Los Chicheros.

25             THE COURT:  Can you speak right into the mic?

GB98LOBC

1          MR. RETURETA:  The large-scale operation is known as

2    Los Chicheros and there are ties, recordings, videos with my

3    client with them.  It's the government's position that my

4    client is responsible for a large portion of what they were

5    doing.  Our position is that he has pled guilty to specific

6    acts with them and should not be held responsible for the

7    larger portion of the Los Chicheros enterprise, which was vast

8    in time, scope and quantity.

9          THE COURT:  OK.

10         MR. RETURETA:  I think that kind of spreads to some of

11   the other issues in dispute, such as the firearms.

12         THE COURT:  I understand.

13         I don't specifically recall the guilty plea, but I

14   presume it was very narrowly tailored and that the allocution

15   was narrowly tailored.

16         MR. RETURETA:  It was, your Honor.

17         THE COURT:  And that it met all of the requirements of

18   the charge.

19         So I guess my question for the government is, how can

20   you essentially expand the scope of that, or are you not trying

21   to do that?

22         MR. LAROCHE:  We are not trying to expand the scope of

23   it.  I think Mr. Lobo pled guilty, his allocution was

24   sufficient.  He didn't have to allocute at that time to the

25   extent of the conspiracy or his involvement.  That's an issue

GB98LOBC

1    that is readily decided at a Fatico hearing.

2            THE COURT:  So the enhancements that are at issue are

3    what?

4            MR. RETURETA:  Your Honor, we are dealing with leader,

5    gun, direct importation, and quantity.

6            Leader role in the offense.

7            THE COURT:  I understand.

8            So the idea is there would be one live witness and

9    then several recordings.  What kind of recordings are we

10   talking about?

11           MR. LAROCHE:  There's audio recordings of both

12   telephone calls.  There's recordings of meetings.  And there is

13   a video recording of a specific meeting that is particularly

14   important.

15           THE COURT:  Do you have transcripts of the recordings?

16           MR. LAROCHE:  Yes, we have, and we have provided them

17   in discovery.  They are all in Spanish recordings.

18           THE COURT:  So it seems to me -- well, let me ask Mr.

19   Retureta.

20           Obviously, you will want to cross-examine the

21   cooperator.  Is there any reason not to have the testimony of

22   the cooperator, and then I don't understand Spanish, so having

23   me listen to the tapes would not be useful at all.  I will

24   obviously rely on the transcripts.  So if we have the

25   cooperator, cross-examination of the cooperator, and then you

1    submit to me the transcripts, is there any reason we can't do

2    it that way so that we don't just burn a lot of time listening

3    to tapes that I can't understand?

4            MR. RETURETA:  If I understand the Court correctly,

5    have the cooperator come in and testify as to what was

6    happening and just have the audios as transcripts?

7            THE COURT:  Right.

8            MR. RETURETA:  That's fine.

9            THE COURT:  So they would be marked and put in

10   evidence.  Then I would read them and consider the testimony

11   and then make a ruling.

12           MR. RETURETA:  We are not here to dispute the

13   recording, the quality of the recording, what was said.  So,

14   yes.

15           THE COURT:  Just what is made of it.  I understand.

16           Mr. Laroche, any reason we can't do that?

17           MR. LAROCHE:  I think that's a fine plan, your Honor.

18           I just want to note, to be clear, we are considering

19   calling one of the agents that was involved in the case, who

20   has information relevant to the specific arrest that we think

21   the Court might want to consider.  So there might actually be

22   more than one witness.

23           With respect to some of the recordings, I think that's

24   a fine plan.  We would want to review it and make sure there is

25   nothing we want to present specifically, because some of it

GB98LOBC

1     might be in context.  So if we are reviewing a recording with

2     the cooperating witness, we would want to play it with him

3     here.

4               THE COURT:  But I still don't want to hear it.

5               MR. LAROCHE:  Understood.

6               THE COURT:  You can have the cooperating witness say,

7     transcript marked as Government Exhibit 1 happened in these

8     circumstances.  I would listen to that testimony and then I

9     would just take the transcript with me.

10              MR. LAROCHE:  That's fine.  We can provide that to the

11    Court.

12              THE COURT:  So what I am going to do is I am going to

13    plan for two days.  So now the question is when do we spend

14    those two days?

15              MR. RETURETA:  If I may suggest?

16              THE COURT:  Yes.

17              MR. RETURETA:  Happening right now, before Judge

18    Crotty, is a case involving two Venezuelan nationals that were

19    participating in an alleged conspiracy involving the Chicheros

20    in Honduras as well as other Honduran officials.  That case is

21    producing testimony right now from one of the case agents in

22    our case, the cooperator in our case, and we anticipate the

23    defendants in Chicheros in our case.

24              So as the Court determines a time frame for this, we

25    have a couple of factors that I would ask the Court to take

GB98LOBC

1    into consideration.  That is, one, that we would like to have

2    the transcript of that testimony to be able to review because

3    it does impact the conduct and operation of that organization

4    in Honduras.

5              THE COURT:  So the idea is you may submit some portion

6    of that transcript on your case, so to speak, and you would

7    highlight it or direct my attention to it.

8              Go ahead.

9              MR. RETURETA:  The other component is that we have an

10   obligation to try and make one more effort as to safety valve,

11   and we would like to squeeze in another meeting with government

12   counsel to try and see if that can be accomplished.

13             THE COURT:  When will the transcript be available?

14             MR. RETURETA:  I left Judge Crotty's courtroom this

15   afternoon.  One of the cooperators was testifying.  They

16   anticipate that the trial will take just short of Thanksgiving.

17   So I anticipate with the holidays, I hope by the end of the

18   year we can get the transcripts.

19             THE COURT:  Would it really take that long?  I don't

20   really know.  I am involved in a long civil case where they are

21   ordering daily copy.

22             MR. LAROCHE:  The government will provide copies, and

23   I think we will be able to provide those shortly after

24   Thanksgiving.

25             THE COURT:  So early December.

GB98LOBC

1          MR. LAROCHE:  That's right.

2          THE COURT:  What about the safety valve meeting?

3          MR. RETURETA:  If we can pull it off before

4    Thanksgiving or shortly after Thanksgiving.

5          MR. LAROCHE:  That's fine.  We will work with defense

6    counsel and do that as soon as we can.

7          THE COURT:  So I am looking at December 20-21.  That

8    way we get it done before the holidays; we get it done before

9    January.

10          MR. RETURETA:  I am bound by a higher authority, my

11   wife, a family vacation.

12          THE COURT:  When are you gone?

13          MR. RETURETA:  We are leaving the Saturday.

14          THE COURT:  The 17th?

15          MR. RETURETA:  Yes.  Through the Christmas holiday.

16          THE COURT:  So you're basically leaving from the 17th

17   through the end of the month?

18          MR. RETURETA:  Actually, family is divided between

19   Florida and New York.  We are back here after the Christmas

20   holiday.

21          THE COURT:  You mean the week between Christmas and

22   New Year's.  We are not around then.

23          Well, then it's problematic.  So bear with me just a

24   minute.

25          How about January 18-19, or actually 17-18.

GB98LOBC

1          MR. LAROCHE:  I am scheduled for a trial that starts

2     that week.

3          THE COURT:  How likely is it to go?

4          MR. LAROCHE:  It is pretty likely at this point to go.

5     I don't know if the Court is available earlier in the month.

6          THE COURT:  I am in trial.  I am in trial the week

7     before.  I am in trial the week after.

8          MR. LAROCHE:  Perhaps sometime in late February, if

9     that works for the Court.

10          THE COURT:  It's November now.

11          MR. LAROCHE:  Obviously, the government, if the Court

12     wants to schedule it on that date, we will make sure we have

13     someone available to do it.  There are other AUSAs on the case.

14          THE COURT:  Let's do that then.  Just because it seems

15     irresponsible to wait on the sentencing until February, and

16     particularly -- well, I guess it doesn't really matter.  Well,

17     I don't know.  You tell me.  The defendant is incarcerated.  I

18     presume that the guidelines one way or the other mean a lot of

19     time, and therefore it's not terribly --

20          MR. RETURETA:  I am not in a position to tell the

21     judge the difference between January and February.

22          THE COURT:  What I am trying to figure out, let's say

23     there were no enhancements.  What is the guidelines

24     recommendation with no enhancements?  Your best case is what?

25          MR. RETURETA:  Level 38.

GB98LOBC

1          THE COURT:  So level 35, criminal history category of?

2          MR. RETURETA:  I.

3          THE COURT:  Is going to be more than one month making

4   a difference.  So I could also just say let's not torture us

5   all and make it February, as a practical matter.

6          MR. RETURETA:  It's fine with the defense, because of

7   this other case that's happening and what is being produced out

8   of that case.  I would like to have more time than less with

9   that.  So that's fine with us.

10          THE COURT:  So now we are looking at February.

11          Mr. Laroche, what are your commitments in February?

12          MR. LAROCHE:  Later in the month would be better.  I

13   have another trial on February 6 that should last two weeks

14   that I give less of a chance to go, but as of right now it's

15   still going.

16          THE COURT:  Why don't we pick two sets of dates,

17   because I don't have trials scheduled in February at the

18   moment.  So let's pick the 7th and 8th.  And if that doesn't

19   work, the 28th and the 1st.

20          I will also just warn you that I generally have

21   conferences in the morning so we would probably start late

22   morning, have a latish lunch, and then just keep going through

23   the day.  Those would be the hours.

24          MR. LAROCHE:  Understood.

25          THE COURT:  What I will do is I will issue a

GB98LOBC

1    scheduling order just so we have this written down somewhere.

2    It will give alternative dates, and it's understood that if

3    your trial goes forward, then we will just move this.

4              MR. LAROCHE:  Thank you, your Honor.

5              THE COURT:  Thank you.

6              Have a good evening.  Thank you for accommodating my

7    schedule.

8              (Adjourned)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25