Gcf1romc

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                        15 Cr. 174 (LGS)

5   LUDWIG CRISS ZELAYA ROMERO,
    MARIO GUILLERMO MEJIA VARGAS,
6   JUAN MANUEL AVILA MEZA, CARLOS
    JOSE ZAVALA VELASQUEZ, VICTOR
7   OSWALDO LOPEZ FLORES, JORGE
    ALFREDO CRUZ CHAVEZ,
8
                Defendants.             Conference
9
    ------------------------------x
10
                                        New York, N.Y.
11                                      December 15, 2016
                                        10:43 a.m.
12

13  Before:

14              HON. LORNA G. SCHOFIELD,

15                                      District Judge

16
                            APPEARANCES
17
    PREET BHARARA
18       United States Attorney for the
         Southern District of New York
19  BY:  EMIL J. BOVE III, ESQ.
         Assistant United States Attorney
20

21  IRVING COHEN, ESQ., Standing in for
    SEAN MAHER, ESQ.
         Attorney for Defendant Ludwig Criss Zelaya Romero
22

23  IRVING COHEN, ESQ.
         Attorney for Defendant Mario Guillermo Mejia Vargas

24  LINDA GEORGE, ESQ.
         Attorney for Defendant Juan Manuel Avila Meza

25

2

Gcf1romc

APPEARANCES
(Continued)

HOWARD R. LEADER, ESQ.
    Attorney for Defendant Carlos Jose Zavala Velasquez

KELLEY J. SHARKEY, ESQ.
    Attorney for Defendant Victor Oswaldo Lopez Flores

DONALD J. YANNELLA III, ESQ.
    Attorney for Defendant Jorge Alfredo Cruz Chavez


ALSO PRESENT:  FRANCISCO OLIVERO, Interpreter (Spanish)
               MERCEDES AVALON, Interpreter (Spanish)

Gcf1romc

1           (Case called)

2           THE DEPUTY CLERK:  Counsel, please state your name for

3   the record, and everyone can be seated.

4           MR. BOVE:  Good morning, your Honor.  Emil Bove for

5   the government.

6           THE COURT:  Good morning, Mr. Bove.

7           MR. COHEN:  Your Honor, good morning.  Irving Cohen

8   appearing for Mr. Mejia Vargas, and I'm also appearing today on

9   behalf of Sean Maher for Mr. Zelaya Romero.  Mr. Maher asked me

10  to cover for him today and he emailed me this morning and said

11  he had a prior --

12          THE COURT:  Can you speak into the mic, please.

13          MR. COHEN:  Of course.  I'll start over.  I don't know

14  what you've heard.

15          THE COURT:  Okay.  Thank you.

16          MR. COHEN:  My name is Irving Cohen, your Honor.  I

17  represent the number two defendant on the indictment, Mr. Mejia

18  Vargas, who is seated in the first row, first seat, toward us.

19          THE COURT:  Okay.

20          MR. COHEN:  I received an email from Mr. Sean Maher,

21  who was appointed to represent Mr. Zelaya Romero yesterday, and

22  he asked me if I could cover for him today as he had a prior

23  engagement in the Eastern District before Judge Johnson.

24          THE COURT:  And Mr. Romero is --

25          MR. COHEN:  And he's the first gentleman in the back

Gcf1romc

```
 1   row with the orange shirt underneath.

 2            THE COURT:  Okay.  You can sit down.  Okay.

 3            MR. COHEN:  And I've spoken to Mr. Romero and he

 4   consents to that, your Honor.  My understanding was he was

 5   arraigned yesterday and entered a plea of not guilty.

 6            THE COURT:  Okay.  Mr. Romero, you consent to have

 7   Mr. Cohen appear for you here today?

 8            DEFENDANT ZELAYA ROMERO:  Yes, for today, because my

 9   legal representative is not here.

10            THE COURT:  All right.  Thank you.

11            So next we have Ms. George?

12            MS. GEORGE:  Good morning, your Honor.  Linda George

13   on behalf of Juan Manuel Avila Meza, who is in the last row,

14   and he has a black eye, so I guess we can all figure who he is.

15            THE COURT:  Good morning.

16            MR. LEADER:  Good morning, your Honor.  My name is

17   Howard Leader.  I represent Carlos Zavala Velasquez.  He's

18   seated in the first row closest to your Honor.

19            MS. SHARKEY:  Good morning, Judge.  Kelley Sharkey for

20   Victor Lopez Flores, first row, center seat.

21            THE COURT:  Okay.  Good morning.

22            MR. YANNELLA:  And good morning.  Donald Yannella for

23   Mr. Cruz Chavez.  He wasn't produced from the MDC.  I'm told by

24   the clerk that there was some kind of medical issue with the

25   MDC and many prisoners are not being produced.  It's not only
```

Gcf1romc

1    my client but many prisoners were not produced in court today

2    from the MDC in Brooklyn, so he's not here.  I just saw him

3    last week and I will go see him again next week.  I would

4    respectfully request that we waive his appearance for purposes

5    of this court appearance.  I'll get a copy of the transcript

6    and I'll share it with my client promptly.

7            THE COURT:  Okay.  That makes sense.  Thank you very

8    much.

9            Counsel may be seated.

10           I see that we're being assisted by a Spanish

11   interpreter.  And so I would ask the defendants, if you have

12   any problem understanding or hearing the interpreter, just

13   raise your hand and let me know and we'll take care of the

14   problem.  And I don't expect that any of the defendants will be

15   speaking, but if so and the interpreter has any problem, please

16   let me know.  Okay?

17           THE INTERPRETER:  Yes, your Honor.  Thank you.

18           THE COURT:  All right.  So we're here for a

19   conference, which was prompted by -- well, it was actually

20   scheduled quite awhile ago to be a conference where I had hoped

21   we might schedule a trial date, but we're obviously nowhere

22   near there.  I will get a report from the government in just a

23   moment, but let me tell you what I understand -- that most of

24   the defendants were arrested in around the middle of July and

25   that new counsel were substituted in for at least some

Gcf1romc

1   defendants in August and they received discovery in September,

2   and that gave rise to a new scheduling order requiring motions

3   to be filed by December 12th.  I then received a request to

4   adjourn the December 12th date for two months because of

5   various difficulties in both opening and accessing the files

6   and also because -- and I will just remind all of counsel who's

7   here, every computer that is here in the Southern District will

8   only read a CD disc, nothing else.  So flash drives, external

9   drives, all of our computers have been disabled, so please

10  don't ever try and give me anything that's on anything that's

11  not on a CD.  But I understand the same problem has arisen

12  trying to review documents with your clients because the

13  government apparently produced materials on an external drive

14  but you can't use that to review documents with your client.

15  So I am loath to extend things yet again for a long period of

16  time, but I think under the circumstances there's not much

17  choice.  But I'd like to ask the government what the status of

18  discovery is.  And I had understood that there was a defendant

19  who was awaiting extradition, and I don't know if that is the

20  most recent defendant, Mr. Zelaya Romero, or if that's somebody

21  else.

22          So if I could get a report from you, Mr. Bove.

23          MR. BOVE:  Yes, your Honor.  Thank you.  Your

24  recitation of the procedural history, I'm mostly in agreement

25  with and I think is accurate.  Discovery was made available in

Gcf1romc

August.  The first five defendants that you referenced, rather
than being arrested, surrendered and arrived in the district.
Discovery was made available in August.  The sixth defendant
that your Honor just referenced that was pending extradition is
Mr. Zelaya Romero, who arrived yesterday, was presented and
arraigned in magistrate's court pursuant to your Honor's
referral.

        The government has made available discovery to the
five defendants that arrived in July, on hard drives.  It's not
my understanding that there was an issue for defense counsel
actually opening the drive.  I think at their offices they're
able to do that.  There have been requests and discussions with
some of defense counsel about making discovery available to the
defendants in the facilities where they're incarcerated.  I
understand that some counsel have addressed that issue by
making copies of the discovery on discs, as your Honor
referenced, and making those discs available, and I'm happy to,
if there are further requests along those lines, coordinate
with the Bureau of Prisons' legal staff to find appropriate
solutions to make discovery available.

        There's a limited amount of additional Rule 16
material that the government obtained recently in connection
with the extradition of the defendant Zelaya Romero.  It's very
limited.  It's principally photographs.  We'll make that
available on disc within the next week.

Gcf1romc

1          And so from the government's perspective, discovery

2     was substantially completed in August, and we're here today to

3     address a further schedule.  I have asked Mr. Maher, counsel

4     for Zelaya Romero, to provide me with a drive so I can make the

5     discovery materials available to him.  That's obviously going

6     to I think fairly take some time for him to review and get up

7     to speed.

8          We did produce last night, pursuant to the Court's

9     protective order, statements that Mr. Zelaya Romero made to

10    authorities in Honduras.  We've commenced discovery with him,

11    and we'll get that process going shortly.

12         THE COURT:  Okay.  By when do you think you can

13    complete discovery to Mr. Romero's counsel?

14         MR. BOVE:  It will take us about three days to copy

15    the materials onto the drive after Mr. Maher provides it.  I

16    don't expect it would be much of a delay in getting the drive

17    from him.  I'll reach out to him again today.  I think it's

18    certainly feasible by the end of next week he has the drive

19    or --

20         THE COURT:  Okay.  So I'll order it to be produced by

21    December 23rd.  Will that work?  I think that's Thursday.

22    Could be Friday.  Actually, I think it may be Friday.

23         MR. BOVE:  I think the issue here is when I'm going to

24    get the drive.  What I would request is an order that the

25    government make the discovery available three days after the

Gcf1romc

1    drive is provided.

2              THE COURT:  I'm going to make it the 23rd.  If

3    there's an issue, let me know.  That way I'll know about it.

4    But hopefully you'll get the drive and there won't be any

5    issue.

6              MR. BOVE:  Yes, your Honor.

7              THE COURT:  Okay.  And that's assuming the 23rd is

8    Friday.  The 23rd is Friday.  So hopefully.  I don't want it

9    to fall into the black hole in the next two weeks.

10             MR. BOVE:  That makes sense.

11             THE COURT:  So does anyone have any sense of

12   Mr. Maher's schedule?  All I want to do is set a motion

13   schedule.  Mr. Cohen, I know it's putting you on the spot a

14   little bit, but what I would like to do is grant the

15   application but then say no further extensions.  Two months

16   seems like enough time, especially if Mr. Maher gets the

17   materials and is able to start reviewing them sometime at the

18   end of the year, the very beginning of the next year.  Any

19   insight into that?

20             MR. COHEN:  All he told me was -- and I didn't have a

21   chance to really speak with him directly, but that he asked

22   that the Court not set a motion schedule until he has a chance

23   to review the discovery.  It's taken three to four months for

24   us to get to where we are now and we're still not there, so,

25   you know, it's the opinion of all of us on the defense side

Gcf1romc

1    that he's going to need at least probably three months, and

2    that would -- because we don't want to have to come back again

3    to your Honor and ask for more time.  I don't know his specific

4    trial schedule, so I can't speak to that, but I think, to be on

5    the safe side, if we could get three months -- I think that's

6    what we discussed -- I don't think we're going to come back to

7    your Honor with any --

8           THE COURT:  Well, you asked for two months, and it had

9    already been extended once before, and, I mean, your clients

10   have been in jail since July, so to just be extending and

11   extending the time doesn't seem right if we can possibly avoid

12   it.

13          MR. COHEN:  I understand that, your Honor, but of

14   course we have Mr. Maher now in the case.  He's going to need

15   at least the amount of time that we had.  So I'm not asking for

16   four months, let's say, but I'm suggesting three months, after

17   discussion with my co-counsel.

18          Personally, your Honor, my client has had some

19   difficulty as well in reviewing the discovery.  And I think

20   there's a lot of -- and I'll let Ms. Sharkey deal with the

21   letter that she wrote to the Court.  I'm sorry.  There are

22   certainly issues with respect to other items that we'd like

23   from the government -- let me put it that way -- that we don't

24   feel that we have gotten.

25          THE COURT:  Okay.

Gcf1romc

1          MR. COHEN:  And I said, as far as my client is

2     concerned, your Honor, we join in any request for extension of

3     time and --

4          THE COURT:  Well, let me ask this:  Is there any

5     reason that I shouldn't make motions due from all the

6     defendants who have had the discovery since August?  Any reason

7     those shouldn't be due relatively soon?

8          MS. GEORGE:  Yes, your Honor.  If I may, on behalf

9     of --

10          THE COURT:  I mean, I get the sense everyone is asking

11     for more time, but I don't really get a good feeling of why.

12     So Ms. George?

13          MS. GEORGE:  Yes, your Honor.  On behalf of Mr. Avila

14     Meza, as an example, when I went through the discovery, I made

15     a list.  I have 11 pages of what's contained in the hard drive.

16     I then began making copies of the CDs so I could have my client

17     review them at the jail.  And there's many hours of videos on

18     here, so it took a very long time to make the copies, etc., and

19     then to get some of these things to him.

20          Part of the problem also is in reviewing these.  Now I

21     can sit in my office and review them, but I really don't know

22     the meaning of some of these things unless my client can review

23     it and I can review it with my client, which leads to the

24     second issue that we're facing.  Every time I go to MCC, and I

25     go maybe two times a week, there's separation orders on these

Gcf1romc

defendants, so if I'm there and then Ms. Sharkey is there, I

can't see my client.  And it becomes very onerous to do it this

way because I'm not there, you know, to socialize with my

client; I want to go over the discovery with him and whatever

he's been able to review, we could set a stage, you know, as to

when we can do this.  I could say look at the CD -- the CDs I

prepared are numbered 1 through I think 20 something.  In any

event, I can say, okay, look at 2 to 3 and I'll be there, you

know, in three days and we'll discuss 2 to 3.  But when I go

there and either of us are there, then we can't do this.  So

there's been many occasions, because we have all these

defendants, that we go and I can't see my client.  So that's

another problem that doesn't permit me to be in a position to

say, well, this is a legitimate motion, this should be filed,

there are more items in discovery that I am going to request

from the government.

      I started to prepare a letter to the government of

what I believe is outstanding.  It's not complete because I

really don't have enough time with my client to just verify

things.  A lot of these videos, to me, are meaningless.  I

don't know who they are.  I don't know where the places are

taken.  So I would need some direction --

      THE COURT:  Okay.  Well, let me just stop you there.

      So the first issue, let me ask Mr. Bove about.  What

can we do about the inability to meet with clients because of

Gcf1romc

1     other counsel's presence?

2               MR. BOVE:  Judge, this is the first I'm hearing of any

3     of this, so I will go back and communicate with the Marshals

4     and BOP about the separations, the need for continued

5     separations and access to the client issues.

6               THE COURT:  Okay.

7               MR. BOVE:  It's also the first I'm hearing about

8     Ms. George's list of questions about discovery.  I'm happy to

9     engage with Ms. George and any other counsel who gives me a

10    reasonable opportunity to do so before finally talking to the

11    Court about discovery issues.

12              THE COURT:  And I especially don't want to hear it if

13    you haven't conferred with the government yet, because perhaps

14    you can just resolve all this.

15              MR. BOVE:  Lastly, with respect to Ms. George's

16    client's access to discovery, on October 11, she filed a letter

17    with the Court that said, "Last week I made discs containing

18    discovery available to the defendant."  That's about two months

19    ago.  So I don't think there's really an issue, reasonably, as

20    long as that was accurate, with him having an opportunity to

21    review the materials produced by the government.

22              THE COURT:  Okay.  Ms. George?

23              MS. GEORGE:  Your Honor, what I gave to my client in

24    October is half of these videos that were produced.  It takes a

25    lot of time to run these videos and have them done on a CD.

Gcf1romc

1    Much more difficult is for him to sit down and be able to go

2    through those and then to meet with me later on.  And granted,

3    I guess he has all the time in the world to look at these

4    things.  I don't know what his accessibility to them actually

5    is -- and meaningful accessibility.  It's one thing to look at

6    them, another thing for us to have a discussion.  As a matter

7    of fact, before we came in today, I spoke to Mr. Bove and I

8    said that I do have some questions, I had some lists made, and

9    I will definitely meet with him about that.  But I'm certainly

10   not in a position to decide what's an appropriate motion at

11   this point or not.

12         THE COURT:  Okay.  So what I'm going to do is I'm

13   going to ask you to get a list to Mr. Bove by Monday and to

14   confer with him by the end of next week.  And Mr. Bove, I trust

15   you'll try and make the discovery available, whatever it is,

16   work it out, and make it available as soon as you can.  If

17   there's any issue, please get back to me within the first two

18   weeks of January.  Okay?

19         MR. BOVE:  Absolutely.  Thank you.

20         MS. GEORGE:  Your Honor, if I may, regarding the

21   separation, this is the issue.  This is what I was told.  As

22   long as there's any separation on them, that they cannot be

23   called out to the visitation room, period --

24         THE COURT:  Well, let me just ask Mr. Bove about that.

25   Have you encountered this before?  Is there a way to deal with

Gcf1romc

1    this?

2              MR. BOVE:  There's certainly a way to deal with it.  I

3    think there are times when the government makes requests for

4    separations to the Marshals and to the Bureau of Prisons; there

5    are times when the Marshals and the Bureau of Prisons

6    implements their own separations.  I'm loath to go into too

7    much more detail about the nature of the separations right now

8    because I haven't had an opportunity to, hearing about this for

9    the first time this morning, to communicate with the people who

10   are responsible and try and come up with a reasonable solution.

11   It's not my understanding that a single separation prevents for

12   all times a defendant from being brought for an attorney visit.

13   If that, for whatever reason, is the situation with respect to

14   these defendants, I'll figure out the best way that I can

15   address it, and if that's not sufficient for counsel, I'm sure

16   they'll come back to your Honor.

17             MS. SHARKEY:  Judge, could I add to that to inform the

18   issue a little bit?

19             THE COURT:  Yes.

20             MS. SHARKEY:  Ms. George and I frequently --

21             THE COURT:  Just stand all the way up and pull the mic

22   closer.

23             MS. SHARKEY:  Thank you.  Much more comfortable.

24             Ms. George and I do conflict all the time, and we are

25   not at the MCC at rush hour.  It's always after 5 or earlier in

Gcf1romc

1     the morning.  And it's just, whenever there is a separation

2     with another defendant, there is no movement on the person who

3     comes in two seconds after the counsel that comes in.  So I

4     join in with Ms. George's motion.

5            But to inform the issue as to the date that motions

6     are due, I had filed earlier this week, and Mr. Bove responded

7     quite quickly -- and I didn't expect such a quick response, but

8     I appreciate it -- a motion and a bill.  I copied the Court on

9     that document so the Court would be informed about the breadth

10    of outstanding discovery that I think we are entitled to.

11           THE COURT:  Did you file it on ECF?

12           MS. SHARKEY:  Yes, Judge.  I filed it in a letter

13    motion.

14           THE COURT:  Ah, okay.  And what was the date?

15           MS. SHARKEY:  I think it was the 12th.

16           THE COURT:  All right.

17           MS. SHARKEY:  At any rate, your Honor, I have a copy

18    of it if you want to look at it.

19           THE COURT:  Well, I have a very short letter from you

20    on the 12th.

21           MS. SHARKEY:  Yes.  There should be an exhibit

22    attached to that.

23           THE COURT:  Ah.  I don't have the exhibit.

24           MS. SHARKEY:  Would you like me to give you my copy?

25           THE COURT:  Yes, if you don't mind.

Gcf1romc

| | |
|---|---|
| 1 | MS. SHARKEY:  Absolutely. |
| 2 | THE COURT:  Thank you. |
| 3 | MS. SHARKEY:  Thank you. |
| 4 | THE COURT:  So tell me what's attached to it. |
| 5 | MS. SHARKEY:  Judge, attached is a letter pursuant to |
| 6 | 16.1 to the prosecution concerning a bill of particular and |
| 7 | demand for discovery.  I'm going to file a motion for discovery |
| 8 | at this point.  Mr. Bove has indicated what he is willing and |
| 9 | not willing to do, and it's the government's position that |
| 10 | they're not complying with any of the requested documents.  I |
| 11 | think those documents will certainly inform my motion practice |
| 12 | and will definitely inform co-counsel's practice. |
| 13 | More specifically, to give you a heads up about it, |
| 14 | there was a meeting that was on videotape where various |
| 15 | defendants were present.  The individual who organized that |
| 16 | meeting and brought the defendants and controlled the recording |
| 17 | equipment is a cooperator with the government -- for the |
| 18 | government, and has been resoundingly proven to be a liar, |
| 19 | frankly, in a matter before Judge Crotty, which you may or may |
| 20 | not be aware of.  It's on the public record.  It's in the |
| 21 | transcript.  But that will certainly inform subsequent motion |
| 22 | practice, and it's my intention to file a motion for discovery |
| 23 | next week. |
| 24 | THE COURT:  So what are you trying to get that relates |
| 25 | to this tape? |

Gcf1romc

| 1 | MS. SHARKEY:  You have my list, but --

| 2 | THE COURT:  Okay.  Just give me a flavor of what we're

| 3 | talking about.

| 4 | MS. SHARKEY:  Sure, Judge.  There are numerous

| 5 | organizations, including the DEA, including ICE, including a

| 6 | commission in Honduras who worked with DEA and ICE in local

| 7 | offices, that were involved with this particular cooperator.

| 8 | I've asked for a number of things concerning that individual.

| 9 | There was an investigation in Honduras where my -- which

| 10 | occurred after the event depicted in the video, which was a

| 11 | joint investigation by DEA and a Honduran commission, where my

| 12 | client was suspended from the national police.  He was

| 13 | exonerated.  That's a specific *Brady* request that I have asked

| 14 | for from the government.  I think that --

| 15 | THE COURT:  Okay.  I'll interrupt you there.  I'll

| 16 | review your motion when I get it.

| 17 | MS. SHARKEY:  Okay.

| 18 | THE COURT:  When are you planning to file it?

| 19 | MS. SHARKEY:  I'll file it next week.

| 20 | THE COURT:  Okay.  And when will the government

| 21 | respond?  When would you like to respond?

| 22 | MR. BOVE:  We'd request two weeks, your Honor.

| 23 | If I could, though, the response that I made to

| 24 | Ms. Sharkey's letter was not that we decline to comply with the

| 25 | discovery demands.  It's in fact that we are in compliance with

Gcf1romc

our obligations, in our view, under Rule 16, *Giglio*, and *Brady*.
We understand and recognize that those obligations are ongoing
and we will continue to remain in compliance with them,
including by producing *Giglio* material pursuant to a schedule
set by the Court prior to trial; also mindful that our *Brady*
obligations require us to make material in our possession
available in a timely way so that the defense can use it.  With
respect to the two issues that we're --

THE COURT:  But what does that actually mean?  In
terms of the material, it sounds like what you're saying is,
you're not saying she can't have the material, it's just
premature and we don't have a schedule yet for production of
materials that are ordinarily produced right before trial.

MR. BOVE:  Yes, your Honor.  And to be more specific
about it, I'm not aware of *Brady* material in the possession of
the United States government.  There was just a reference made
by counsel to an investigation by the Honduran government.
There is a pending request made by my office for information
relating to that investigation.  That request is pending with
Honduras.  If they respond to that request and if there are
materials that are subject to any of my discovery obligations,
I'll make those materials available to defense counsel --

THE COURT:  So let me interrupt, just so I don't
insert myself into the middle of this.  Before any motion is
filed, Ms. Sharkey, I'm going to direct that you speak with

Gcf1romc

```
1   Mr. Bove, that the two of you speak together live.  It doesn't
2   have to be in person.  It can be on the phone.  But you must
3   speak to each other and discuss each of these items so that you
4   both understand each other's positions.  And with that,
5   hopefully you can narrow the motion, or at least there won't be
6   miscommunication with respect to the government's position.
7           MS. SHARKEY:  Okay, Judge.  That's quite reasonable.
8   I do think that Mr. Bove and I have -- let me say reasonable
9   minds disagree about their disclosure requirements.
10          THE COURT:  I understand.
11          MS. SHARKEY:  But we will --
12          THE COURT:  But at least talk to each other so that,
13  you know, if there's something that he doesn't have control
14  over and doesn't have, it's hard for him to produce that.  So
15  you should at least find out if that's his position with
16  respect to certain items you're asking for.
17          MS. SHARKEY:  Will do.
18          THE COURT:  Okay.  All right.  So you would file that
19  motion by the end of next week, and then the government, what
20  date would you like?
21          MR. BOVE:  I'm sorry, your Honor.  I don't have a
22  calendar.
23          THE COURT:  Well, so the end of next week is
24  December 23rd.  A week later is December 30th.  That's not
25  usually that productive a week.  So would you like two weeks
```

Gcf1romc

1    after that?

2              MR. BOVE:  That would be helpful, your Honor.

3              THE COURT:  Okay.  So let's say a response on

4    January 13th, a reply on the 20th.

5              MS. SHARKEY:  Judge, my response is January 13th?

6              THE COURT:  No.  You file the 23rd, the government

7    will file its response on the 13th, and Ms. Sharkey, you'll

8    reply by the 20th.  Okay?

9              MS. SHARKEY:  Okay.

10             THE COURT:  All right.

11             MR. BOVE:  Judge, if I can make one application.

12             THE COURT:  And I hope Mr. Street is taking all this

13   down so we can generate an order.

14             THE DEPUTY CLERK:  Yes.

15             THE COURT:  Wonderful.  Okay.  Thank you.

16             MR. BOVE:  With respect to this bill of particulars

17   practice, I do think that with respect to the five defendants

18   who have been here since July, we should be in a position to

19   resolve bill of particulars practice as to all of them rather

20   than in piecemeal fashion, so it may make sense, and I

21   respectfully request, that this be the schedule for all such

22   motions.

23             THE COURT:  Okay.  Any objection to that?

24             MS. SHARKEY:  Well, except on behalf of counsel that's

25   not present.

Gcf1romc

1        THE COURT:  Well, obviously.  Counsel who's not

2   present --

3        MR. BOVE:  Represents the sixth defendant who just got

4   here, which is not part of the application.

5        THE COURT:  Okay.

6        MR. COHEN:  Your Honor, just on that point, I wrote

7   your Honor a short letter indicating that I would be joining in

8   any requests and any motions that would be filed.  That relates

9   to the general -- really generally.  Obviously if there's

10  anything that's specific, I would file my own motion, so I want

11  to be included in whatever --

12       THE COURT:  Okay.  Well, you can all join in whatever

13  motion Ms. Sharkey files.  If you have anything specific that

14  is not included in her general request, you need to file it

15  yourself by the 23rd, which is next week.  Okay?

16       MR. COHEN:  That's fine, your Honor.  Ms. Sharkey's

17  letter and motion referred to her client in particular.  I

18  would just basically substitute my client as well.

19       THE COURT:  You can file a piece of paper that says,

20  We join and insert our client in all of the places where her

21  client is mentioned.

22       MR. COHEN:  Very well.  And I will speak to Mr. Maher

23  and I will inform him as well.

24       THE COURT:  Well, that order doesn't apply to him, but

25  I trust that Mr. Bove and Mr. Maher will speak, and to the

Gcf1romc

1    extent there are any issues, if you could just bring them to my

2    attention promptly.

3             I am going to ask for some status letters here just

4    because it seems as though it's productive when you all get

5    together and tell me what's happening.  So I will set dates for

6    status letters in my order.  And is it too hard for the

7    defendants to give me a joint status letter?

8             MS. SHARKEY:  Yes.

9             THE COURT:  Okay.  So just give me individual status

10   letters.

11            MS. SHARKEY:  Thank you.

12            THE COURT:  And the government will as well.

13            MS. GEORGE:  Your Honor, if I may, on behalf of

14   Mr. Avila Meza, the only problem I have in filing the motion,

15   whatever Ms. Sharkey filed, is that I'm not sure I have

16   everything here.  I will try to comply with it, and if I have

17   to supplement it at a later date, then I'll just have to

18   supplement.  I think it's premature to file it now, but I'll --

19            THE COURT:  Well, I mean, you have had the discovery

20   for some time.  I understand you're having trouble getting

21   through it with your client, but to the extent there are things

22   that are missing, I would hope that you would know that by now.

23            MS. GEORGE:  I'll give you an example.  I printed out

24   over 10,000 pages of emails.  I'm sure I've not gone through

25   10,000 pages of emails yet.  So I've been looking at that,

24

Gcf1romc

1    looking at the videos.  I don't know.  I just don't want to be

2    boxed into a corner, that if there's something there --

3            THE COURT:  Well, I'm going to set that date as a due

4    date.  If at some point in the future you need to file

5    something additional, you'll let me know, but I am likely to

6    say I already gave you a date and I'll listen to why you are

7    raising it at a later time.  I mean, that's all we can do.

8            MS. GEORGE:  Thank you, your Honor.

9            THE COURT:  Yes, Mr. Leader.

10           MR. LEADER:  Thank you, your Honor.  I appreciate

11   that.  I'm in a slightly different position, and I want to make

12   clear for the Court, I came into the case in September, and as

13   I alerted the Court in my application recently, owing entirely

14   to an oversight that wasn't caused by me, in combination with

15   prior counsel, we simply had the discovery in the wrong format,

16   not on a hard drive at all but a USB drive, I believe, which

17   I've now finally discovered.  So my journey through this

18   discovery, this voluminous discovery really has only just

19   begun.  So certainly, your Honor, I understand the Court's

20   understandable desire to move things along here, but I must

21   flag for the Court the substantial probability that after the

22   23rd of December I may well be filing an additional

23   supplemental discovery motion at that point.

24           THE COURT:  Okay.  Well, I urge you to do what you can

25   between now and the 23rd.

Gcf1romc

1          MR. LEADER:  Of course, your Honor.  I understand

2     that.

3          THE COURT:  Because I don't want to have to deal with

4     this in a piecemeal fashion.  Frankly, it burdens the Court,

5     and it also risks having slightly incoherent rulings.  So if I

6     can just have everything at the same time, it will help all of

7     us.

8          MR. LEADER:  I wholeheartedly concur with that view,

9     your Honor, and indeed I believe -- I flagged that also in my

10    letter to you, that I think it makes sense to coordinate the

11    schedule to have one schedule, to the extent we can, and

12    because, as Mr. Cohen indicated to you a few minutes ago,

13    Mr. Maher has only just come in the case and we've had, say,

14    three, four months and only gotten this far, I think

15    realistically, you know, adjourning the motions, defense

16    motions for three months under these circumstances is not

17    unreasonable, and I ask that you do that.

18         THE COURT:  Let me just rule on that so we can stop

19    talking about it.

20          In your letters you asked for two months, which would

21    put us two months from the letters, which would be February 12.

22    Now you're asking for three months, which would be March 12.

23    So what I'm going to do is I will make it March 3rd, which is

24    a Friday, and it is almost the three months that you asked for.

25    But that is a firm date for motions, and I'm not anticipating

Gcf1romc

1    extending it again.  So I know it's arduous discovery, but you

2    need to make your way through the discovery by then so that I

3    can have any motions you intend to file or not.

4          And then I would like the government's response --

5    when would you like to file a response, Mr. Bove?

6          MR. BOVE:  May I have three weeks on this one, your

7    Honor?

8          THE COURT:  Yes.

9          MR. BOVE:  Thank you.

10         THE COURT:  Let's say March 24th for a response and

11   then March 31st for reply.

12         I would also ask the defendants -- I am sure this is

13   something that you will agree is in your interest as well as in

14   mine -- to the extent you can coordinate so I don't have to

15   read the same briefing on the same issue six, seven times, I

16   would really appreciate that, so feel free, and I encourage

17   you, to join in each other's arguments if there are general

18   arguments that can be made.  All right?

19         Is there anything else we need to talk about?

20         MR. COHEN:  Your Honor, on behalf of CJA counsel, will

21   you authorize the transcript of the proceeding to be --

22         THE COURT:  Yes, I will authorize a transcript,

23   particularly because Mr. Maher is not here.

24         MR. COHEN:  Thank you, your Honor.

25         THE COURT:  And also one of the defendants is not

Gcf1romc

1    here.

2          Yes.

3          MR. LEADER:  Your Honor, I have something pertaining

4    exclusively to my client, and I don't know whether it makes

5    sense just to take him separately or -- rather than have all

6    the defendants here.  It's entirely up to you.

7          THE COURT:  Okay.  That's fine.  I can excuse

8    everyone.  We don't have to keep everybody in the courtroom.  I

9    mean, unless you tell me it's an application that takes two

10   seconds.  But if it's longer than that, I'll just excuse

11   everyone.

12         MR. LEADER:  It's just a few seconds, your Honor.

13   Okay.  I can do it right now.

14         THE COURT:  Okay.

15         MR. LEADER:  It is this.  I'm sorry to burden the

16   Court with this and -- because I have nowhere else to turn.

17   But it has to do directly with the fact that shortly after my

18   client surrendered himself to the DEA in Tegucigalpa, Honduras

19   in late July, my client's family, his wife and two infant

20   children, who had previously traveled frequently to the United

21   States on tourist visas and being with other family members,

22   some of whom are present here in court today, all of those

23   visas were summarily revoked, and as a result of that, my

24   client's wife and two children have not been able to travel to

25   the United States to visit with Mr. Zavala Velasquez while he

Gcf1romc

1    remains in prison here in the MCC.  It's as though the family

2    is being punished for the alleged crimes committed by the

3    father.  And I ask the Court -- I don't know what the Court can

4    do directly other than --

5            THE COURT:  My experience is I have zero influence

6    over ICE.

7            MR. LEADER:  Few of us do, your Honor.  Few of us do.

8    But I ask the Court at least to ask Mr. Bove -- I've spoken to

9    him about this briefly before we began today -- to ask Mr. Bove

10   to look into this and to see what can be done to restoring the

11   family's visas.  Thank you very much, your Honor.

12           THE COURT:  Okay.  Mr. Bove, anything you can say or

13   add?

14           MR. BOVE:  I can add that on a personal level, I'm not

15   unsympathetic to the situation that was just summarized.  I'm

16   also mindful that we're one government when we appear before

17   the Court.  That being said, my office had nothing to do with

18   those revocation decisions which, just based on the description

19   that was just provided, I understand would most likely have

20   been made by the Department of State personnel, not ICE

21   personnel.

22           THE COURT:  Ah.

23           MR. BOVE:  And that I am similarly constrained --

24           THE COURT:  Is there anything you can think of that I

25   can do that would be helpful?  A letter or an order or

Gcf1romc

1   something?

2          MR. BOVE:  Your Honor, I'm hesitant to comment on

3   that, because although I'm not in a position to disagree with

4   the assessment by defense counsel or the bases of those

5   positions, I am also not in a position --

6          THE COURT:  I'm not asking you to advocate; I'm just

7   asking whether you know if anyone will pay attention to

8   anything I do and in what form they might --

9          MR. BOVE:  My point is that I'm not sure it would be

10  appropriate for me to seek a judicial intervention from your

11  Honor in this procedural posture because I don't know the basis

12  for those decisions which relate to third parties.

13         THE COURT:  Is it possible for you to look into it?

14         MR. BOVE:  I don't know who I would contact.  These

15  are decisions made within a separate part of the government.  I

16  think it's not accurate to say that there's no place else to

17  go.  The place to go is with the component of the government

18  that actually issued the revocation decision, and so the people

19  who are affected or aggrieved by this should make a renewed

20  application for visas; to the extent those are denied, consult

21  with the authority that denies them and proceed in that

22  fashion.  I think that's the more efficient way to go here.

23         THE COURT:  Mr. Leader?

24         MR. LEADER:  Your Honor, while I certainly sympathize

25  with Mr. Bove he cannot advocate, I can and do.  I urge you to

Gcf1romc

perhaps make some sort of judicial recommendation --

            THE COURT:  Well, why don't we do this first.  I'm
going to direct Mr. Bove to find the name of a human being who
Mr. Leader can talk to.  Then, Mr. Leader, you do your best to
talk to them, and if there is nothing good that comes of it,
then you can make an application to me for a recommendation or
a letter and also explain in the letter why it makes sense and
I can then hear from the other side as far as any concerns they
may have and we'll take it from there, okay?

            MR. LEADER:  I'm very grateful.  Thank you very much.

            MS. GEORGE:  Your Honor, one other small issue I have.

            THE COURT:  Yes.

            MS. GEORGE:  Mr. Avila Meza has had some issues where
he's fallen off the top bunk at MCC, and that's why he became
bruised and everything, and I would ask if we could have a
recommendation maybe from the government that he be placed on a
bottom bunk and that he be taken out of SHU so that --

            THE COURT:  Well, he must be in SHU for a reason.  I
don't want to interfere with that.

            MS. GEORGE:  Well, what happened is he fell, and
either they don't believe him, what happened -- I'm not sure
about that, but perhaps the government can find out further.

            THE COURT:  Well, can we just make a request for a
bottom bunk.

            MR. BOVE:  I'm happy to convey that request, your

Gcf1romc

1    Honor.

2              THE COURT:  Okay.  Thank you.

3              MS. GEORGE:  Thank you, your Honor.

4              THE COURT:  We're adjourned.

5              MR. BOVE:  Your Honor?

6              THE COURT:  Yes.

7              MR. BOVE:  I do have one application with respect to

8    the exclusion of time.

9              THE COURT:  Ah, good point.

10             MR. BOVE:  I think, given the schedule that the Court

11   has set --

12             THE COURT:  Yes.

13             MR. BOVE:  -- perhaps it makes sense to set at least a

14   control date and exclude time until then based on counsel's --

15             THE COURT:  So can you remind me when your reply is

16   due after the motions.

17             MR. COHEN:  Our reply?  31st.

18             THE COURT:  March 31st?  Okay.  Let's set a

19   conference date.  The motions are due on March 3rd, right?

20   Let's set a conference date in the next week.  If there are

21   motions filed, I will adjourn that conference date to some time

22   shortly after they are completely briefed, and if there are no

23   motions filed, we'll have the conference on the 8th, and I'll

24   put the exact time in the order, but I'll set a trial date on

25   the 8th if there are no motions.

Gcf1romc

1          MR. COHEN:  March 8th.

2          THE COURT:  March 8th, right.  And I'll issue an

3    order today which will be filed today or tomorrow that will

4    have the precise time.

5          So did you want to make an application, Mr. Bove?

6          MR. BOVE:  I do, your Honor, and I ask that time be

7    excluded until March 8th to allow counsel to review discovery

8    that has been produced by the government and contemplate and

9    then file any motions they wish to file.

10          THE COURT:  Okay.  Any objection to the exclusion of

11   time?

12          DEFENSE COUNSEL:  No, your Honor.

13          THE COURT:  So I will exclude time between now and

14   March 8th to permit discovery to be completed and to allow

15   the defendants to contemplate what, if any, motions to file.  I

16   find that the ends of justice served by excluding the time

17   between now and March 8th outweigh the best interests of the

18   public and the defendant in a speedy trial under 18 U.S.C.

19   3161(h)(7)(A).

20          Okay.  Now we are adjourned.  Thank you.

21          ALL COUNSEL:  Thank you, your Honor.

22          (Adjourned)

23

24

25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300