UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
**UNITED STATES OF AMERICA**                                        15-CR-174 (LGS)

    - against -

**VICTOR LOPEZ FLORES,**

              **Defendant.**
-----------------------------------------------------------x

# REPLY MEMORANDUM OF LAW IN SUPPORT OF
# MR. LOPEZ FLORES'S PRE-TRIAL MOTIONS

                Kelley J. Sharkey
                26 Court Street, Suite 2805
                Brooklyn, NY 11242
                (718) 858-8843

                Attorney for Victor Lopez Flores

Beverly Van Ness, Of Counsel
January 20, 2017

INTRODUCTION

For the most part, Mr. Lopez Flores rests on his opening memorandum of law in support of his pre-trial motions (ECF #94). However, several matters raised by the government in its memorandum (ECF #98) merit reply.

ARGUMENT

I.   MOTION FOR BILL OF PARTICULARS[1]

The government resists all requests for particulars. It cites the discovery information it has supplied, and cases which deny some of the information the defendants have sought (ECF #98, pp. 17, 21-22). But Mr. Lopez Flores has cited cases that order the release of this same information (ECF #94, pp. 8-10). Decisions turn on facts (see authorities at ECF #94, pp.6-8), and with respect to Lopez Flores, the facts support further disclosures. As he has underscored – and the government ignores – Lopez Flores is cited but once in the discovery material (he attended a meeting in June, 2014), in connection with a ten-year drug conspiracy and related use of firearms. Moreover, the unreliability of the two confidential sources at that meeting has already been demonstrated in another prosecution in this District. Finally, Lopez Flores's claimed offense conduct occurred solely in Honduras, a country that presents unusually difficult conditions for independent investigation by his defense team (see ECF #94, pp. 2-3).

---

[1] In a footnote, the government seeks denial of all the defendants' motions for failure to submit an affidavit per Local Rule 16.1 (ECF #98. p. 117 of 34, n.10). Mr. Lopez Flores cites this rule in his opening memorandum, and sets forth the information called for (ECF #94, p. 2). The government does not dispute any of the facts we cite, as to our good faith efforts to resolve the issues before requesting court intervention.

Accordingly, in order to prepare his defense and prevent surprise (and possible attendant trial delay), Lopez Flores has made targeted requests for particulars about his own involvement in the offenses: with respect to the narcotics count, the date he purportedly joined and last participated in the conspiracy, the date and location of meetings or conversations reflecting his joining, and the date, location and nature of each overt act he committed and the identities of co-defendants participating in these acts; as to the firearms count, he seeks the date and location of any use or possession of a firearm by him in connection with the drug conspiracy (ECF #94, pp. 8-10. requests 1, 2, 4 and 7).  He seeks similar information about his co-defendants in connection with the drug charge (id., requests 3 and 5).

Contrary to the government's contention, Lopez Flores has not sought "[t]he date, location, and description of each overt act committed in furtherance of each charged conspiracy" throughout the entire 10-year period, regardless of who committed them (see ECF #98, ""Request 2" at p. 15 of 34).  Rather, he seeks to be "apprised of the conduct he was alleged to have undertaken in furtherance of this multi-faceted, if not multiple conspiracy" – information that has not been disclosed and which the government is obliged to provide.  United States v. Barnes, 158 F.3d 663, 665 (2d Cir. 1998) (emphasis added); cf. United States v. Muyet, 945 F.Supp. 586, 600 (S.D.N.Y. 1996 (indictment contained information "about each defendant's role in each overt act cited").

Lopez Flores also seeks the names of his alleged co-conspirators, including those with whom he is alleged to have conspired directly.  This request, too, is supported by case law, and, once again, facts matter (see ECF #94, request 5 and authorities cited, pp. 9-10)..  The conspiracy here is of very long duration, Mr. Lopez Flores's activities are not revealed by the discovery the

3

government has turned over, no matter how extensive it may be, and counsel faces serious obstacles in investigating the case independently in Honduras. If there are safety concerns as to the individual(s) implicated in this request – an assertion the government only makes in broad strokes based on an *ex parte* declaration we are not privy to (see ECF #98, p. 4 of 34) – we ask the Court to consider alternatives to outright denial of the information sought. For example, it can order the information disclosed to counsel only, under a protective order, so that it is available in the investigation and preparation of Mr. Lopez-Flores's defense. At the least, the government should be required to make an offer of proof *in camera* and establish, if it can, that disclosure of this information <u>as it relates to Lopez Flores, specifically</u>, would endanger a coconspirator or compromise an ongoing investigation. Otherwise, the information should be disclosed.

**II.    MLAT-RELATED DISCOVERY REQUEST**

As noted in our opening memorandum, the government has sought a wealth of pertinent information from the Honduran government ("MLAT letter"). Lopez Flores has asked the Court to direct the government to turn some of it over to the defense upon receipt, including his criminal history records, his personnel records from the police department, and materials related to the investigation of him and the other defendants by the Honduran Special Commission (ECF #94, pp. 3, 5). The government objects, unless a document fits within the letter of Rule 16. It suggests that the defendants make an application for letters rogatory (ECF #98, p. 24 of 34).

Respectfully, this seems to be a wasteful and time-consuming exercise, given that we are seeking information the government has already asked for pursuant to Article 7 of the United Nations Convention Against Illicit Traffic in Narcotic Drugs and Psychotropic Substances. If the

Court declines to order the government to provide the documents we seek, we will certainly pursue other avenues to obtain it.

### III. REQUEST FOR BRADY AND GIGLIO MATERIAL

The government states it is aware of its Brady obligations and will comply with the law. Accordingly, it asks the Court to deny our specific Brady requests (ECF #98, pp. 23-24 of 34). Rather than deny them, we ask the Court to direct the government to continue to comply with its obligations and disclose potentially exculpatory material – whether or not it is the subject of a specific Brady request – as the government obtains it.

With respect to our request for Giglio material, the government states that such information need not be disclosed until close to the start of trial (id., pp. 24-26, 28 of 34). It argues that this is not only the practice in the Southern District, but that this disclosure schedule is in the nature of an inflexible "rule" (id., p. 26). That is not so, as the very cases the government relies on make clear. See, e.g., United States v. Coppa, 267 F.3d 132, 146 (2d Cir. 2001); United States v. Espinal, 96 F.Supp.2d 53, 66-67 (S.D.N.Y. 2015) (cited by government at pp. 26-27 of 34, ECF #98). Giglio does not address impeachment evidence in general, with respect to all government witnesses. Instead, it requires the government to disclose "evidence affecting credibility" of key government witnesses, those whose "reliability . . . may well be determinative of guilt or innocence." Giglio v. United States, 405 U.S. 150, 154 (1972); see United States v. Avellino, 136 F.3d 249, 255 (2d Cir. 1998) (Brady covers impeachment evidence that has "the potential to alter the jury's assessment of the credibility of a significant prosecution witness").

Thus, the government's obligations under Giglio are not coterminous with its obligations under the Jencks Act.  Moreover, disclosure must be provided sufficiently in advance of trial to allow the defense to investigate and make effective use of the impeaching information at trial.  See Grant v. Alldredge, 498 F.2d 376, 382 (2d Cir. 1974) (reversing conviction due to prosecution's failure to disclose Brady material "well before the commencement of trial," in order "'to allow for full exploration and exploitation by the defense'").  "[The timing of disclosure under Brady and Giglio may be of critical importance in many criminal cases."  United States v. Coppa, supra, 267 F.3d at 138.

In this case, as discussed, all pertinent events took place on foreign soil, and in a country which presents particularly challenging conditions for investigation.  We reiterate our request for an order directing prompt disclosure of Brady and Giglio material by the government, the latter as to all significant prosecution witnesses.  This includes any additional evidence relevant to the reliability of the two informants at the June, 2014, meeting (Jose Santos Pena and Jose Santos Hernandez) that was attended by Lopez Flores and the other defendants (see ECF #94, p. 3; reply memorandum of co-defendant Avila-Meza, ECF #100, pp. 3-4).  It also includes documents reflecting payments made to cooperating witnesses and informants, or charges filed against them, which would make them beholden to the government or otherwise support a motive to curry favor by falsely inculpating Lopez Flores (see ECF #94, p. 4).

## IV. GOVERNMENT'S REQUEST FOR RECIPROCAL DISCOVERY

At this time, Mr. Lopez Flores does not possess any discovery material required to be produced under Rule 16.

## CONCLUSION

For the reasons stated, Mr. Lopez Flores respectfully asks this Court to grant the relief requested.

/s/_____
Kelley J. Sharkey