UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>FABIO LOBO LOBO,<br>                Defendant. | 15 Cr. 174-01 (LGS) |

**DEFENDANT FABIO LOBO'S
MEMORANDUM IN AID OF SENTENCING**

RETURETA & WASSEM, P.L.L.C.

Manuel J. Retureta, Esq.
300 New Jersey Avenue, NW
Suite 900
Washington, D.C. 20001
*Defense Counsel for Fabio Lobo*

## I. Concise Sentencing Argument

Mr. Lobo fell prey to the lure of easy money and made extremely foolish – and criminal – decisions and associations. Mr. Lobo was a tool that was used by a large-scale drug trafficking organization, and he was a target of a law enforcement sting operation that he willfully entertained. Mr. Lobo also accepted responsibility.

The evidence received at the *Fatico* hearing – taken in the light most favorable to the government – can be summed up simply as Mr. Lobo:

1. Receiving a bribe to assist a drug trafficking organization;

2. Assisting in money laundering for the drug trafficking organization;

3. Talking about and assisting in drug shipments that amounted to 1400 kilograms of cocaine;

4. Accepting a $100,000.00 bribe from a drug trafficker;

5. Informing a drug traffickers of impending property seizures; and,

6. Conspiring to participate in a drug trafficking venture that was a DEA sting.

These six items were the sum and substance of Mr. Lobo's criminal activity. He has accepted responsibility for his actions and he respectfully asks the Court to take that into consideration.

Absent qualification for consideration below a statutory minimum, Mr. Lobo respectfully asks the Court to impose the statutory minimum of 10-years, waive imposition of a fine, calculate forfeiture at the level reflected by the six factual items noted above, and recommend Bureau of Prison placement at a facility in the State of Florida.

## II. Statutory Guidance – 18 U.S.C. § 3553 (a)(1, 2, 3 and 6)

Although the United States Sentencing Guidelines have been rendered advisory, district courts are still required to consider the Guidelines as well as the factors set forth in 18 U.S.C. § 3553 (a) when imposing sentences.[1] *See United States v. Booker*, 543 U.S. 220 (2005). Within § 3553 (a) is specific statutory guidance regarding the need for courts to analyze the history and personal characteristics of a defendant, the impact of a sentence, and sentence comparison and disparity. § 3553 (a), subsections 1, 2, 3 and 6 state:

> (a) **Factors to be considered in imposing a sentence.** The court shall impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider --
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed to reflect the four primary purposes of sentencing, i.e., retribution, deterrence, incapacitation, and rehabilitation;
>
> (3) the kinds of sentences available (e.g., whether probation is prohibited or a mandatory minimum term of imprisonment is required by statute);
>
> (6) the need to avoid unwarranted sentencing disparities among defendants

---

[1] Sentencing courts must consider and balance all of the factors set forth in 18 U.S.C. § 3553 (a). *United States v. Gall*, 552 U.S. 38, 48 (2007).

with similar records who have been found
guilty of similar conduct;

By its plain language, § 3553 (a) mandates that district courts consider the defendant, and the factors set forth above when fashioning a proper sentence.

*History and Characteristics of Mr. Lobo – 18 U.S.C. § 3553 (a)(1)*

Mr. Lobo is a husband and father. (PSR p.19). His wife and three daughters have remained by his side throughout his ordeal. Letters from his wife and eldest daughter are attached and describe what Mr. Lobo has meant to them and how his criminal activity have impacted the family life. Exhibits 1 and 2.

Mr. Lobo served his community as an attorney, a juvenile court judge, and notary. He was an attorney from 2000, a juvenile court judge from 2002 to 2009, and a notary from 2009 to 2015. Throughout this time he excelled and provided services to all members of his community. Exhibits 3-7. Earning a meager salary, there was nothing about Mr. Lobo's lifestyle that reflected a large-scale drug trafficker. Exhibit 8.

While the government has tried to portray Mr. Lobo as a large-scale drug trafficker, his personal life does not reflect the lavish items to be expected. As noted in Exhibit 8, his monthly "Sueldo," or wage, was $45,000 Lempiras; equivalent to just under $2,000 (US). The government has not introduced evidence of properties, vehicles, watches, artwork or cash possessed by Mr. Lobo. If Mr. Lobo was a large-scale drug trafficker, he was the worst one on record in terms of earnings.

4

Rather than collecting money from illegal activity, Mr. Lobo was drowning in debt. Exhibits 9 through 13 are documents that reflect outstanding debts and unpaid loans by Mr. Lobo over the years. Exhibits 9-13. As a result of this debt, today it is Mr. Lobo's wife that supports his three daughters at the monthly salary of $2,000 (US). Exhibit 14. Rather than a lavish home, the family has a humble townhouse valued at approximately $100,000 (US). Exhibit 15.

*Sentence Purpose & Kinds of Sentences – 18 U.S.C. § 3553 (a)(2 and 3)*

Mr. Lobo pleaded guilty to a crime that carries a 10-year mandatory minimum. A 10-year sentence will serve the primary factors of § 3553 (a)(2); namely, retribution and deterrence. Mr. Lobo's sentence will be served thousands of miles away from a weekly family visit. His sentence will be announced across his home country of Honduras and be a source of shame for his family. Mr. Lobo's daughters will grow up without their father. Retribution is unquestionably achieved by a 10-year sentence.

*Sentence Comparisons / Disparities – 18 U.S.C. § 3553 (a)(6)*

Although the United States Sentencing Guidelines have been rendered advisory, district courts are still required to consider the Guidelines as well as the factors set forth in 18 U.S.C. § 3553 (a) when imposing sentences.[2] *See United States v. Booker*, 543 U.S. 220 (2005). Within § 3553 (a) is specific statutory

---

[2] Sentencing courts must consider and balance all of the factors set forth in 18 U.S.C. § 3553 (a). *United States v. Gall*, 552 U.S. 38, 48 (2007).

guidance regarding the need for courts to analyze other sentences and avoid disparities and "avoid unwarranted sentence disparities." *Id.*

By its plain language, § 3553 (a)(6) mandates that district courts consider sentences imposed upon similarly situated defendants in order to ensure increased uniformity in sentencing and deter unwarranted disparity. At its very core, the goal of § 3553 (a)(6) is to ensure that every criminal defendant is treated fairly and justly. Moreover, by requiring district courts to consider sentences imposed upon similarly situated defendants, § 3553 (a)(6) ensures that the power to determine appropriate sentences for criminal defendants is not left to a prosecutor, but rather remains squarely within the province of district court judges.

The types of defendants and sentences to be considered under § 3553 (a)(6) are those imposed upon a *similarly situated* defendant; namely, an individual (1) convicted of a similar crime; (2) who participated in similar, relevant conduct; and (3) who possesses a similar criminal history category. *See United States v. Colwell*, 304 Fed.Appx. 885 (D.C. Cir. 2008); *see also United States v. Davis-Bey*, 2010 WL 1929764 (8th Cir. 2010).

In the ordinary case, a court implicitly gives sufficient weight to the need to prevent unwarranted sentence disparities when it has "correctly calculated and carefully reviewed the Guidelines range." *United States v. Jenkins*, 854 F.3d 181 n.6 (2d Cir. 2017), citing, 18 U.S.C. § 3553 (a)(6); *Gall v. United States*, 552 U.S. 38, 54 (2007). However, Mr. Lobo does not present as the ordinary defendant, nor does his case qualify as the ordinary case.

In Mr. Lobo's case, for an appropriate comparison to be made, a similarly situated defendant would be an individual who accepted responsibility for his conduct, pleaded guilty and saved the time and resources of the government and the Court. The comparison must also take into account the limited role that Mr. Lobo played and the time-frame within which he acted.

As the Court of Appeals for the District of Columbia Circuit noted in *Colwell*, review of the sentencing transcripts and memoranda of other criminal defendants provides a defendant with the information necessary to determine whether such other defendants are, in fact, similarly situated in order to make the appropriate arguments at sentencing. *United States v. Colwell,* 304 Fed.Appx. 885 (D.C. Cir. 2008). The Supreme Court echoed the need for review of other defendant's sentencing materials when it stated that in order to avoid " 'unwarranted sentence disparities' within the meaning of § 3553 (a)(6), the proper solution is for district courts to take account of sentencing practices in other courts." *United States v. Kimbrough*, 552 U.S. 85, 88 (2007).[3]

When a district court is not provided with information regarding the sentences imposed upon similarly situated defendants for its consideration, it is impossible for it to appropriately and properly apply § 3553 (a)(6). As the Court of Appeals for the Seventh Circuit recently recognized, a district court cannot conduct a full "subsection (a)(6) analysis" without evidence of sentences received by other defendants "with similar records found guilty of similar conduct." *United States v.*

---

[3] The *Kimbrough* Court made that statement in the context of the crack/cocaine disparity.

*England*, 2010 WL 1791411, p.4 (7th Cir. 2010). Such an analysis would empower a court to reason for any potential disparity. *United States v. Ausburn,* 502 F.3d 313 (3rd Cir. 2007).

Courts have varied where unwarranted sentencing disparities appear. In *United States v. Arrelucea-Zamudio,* 581 F.3d 142 (3rd Cir. 2009), the Third Circuit examined sentencing disparities created by "fast-track" programs to expedite immigration crimes; the court held that in districts where no "fast-track" program is offered courts have the authority under § 3553 (a) (6) to vary downward in appropriate cases to avoid unwarranted disparities with defendants sentenced in fast-track districts. *Id.* at 157.

The immediate comparison to Mr. Lobo's case is the case(s) of codefendants. Last year, and as this Court is aware, a superseding indictment was filed on June 29, 2016. This indictment, while labeled as "superseding," focused on six Honduran police officers and alleged a conspiracy to violate the narcotics laws of the United States. [ECF 35, *Superseding Indictment*, p.4]. Interestingly, the police officers conspiracy dates back to 2004, where Mr. Lobo's conspiracy only dated back to 2009. By contrast, and for the purposes of § 3553 (a)(6) sentence comparison and disparity analysis, codefendant Victor Oswaldo Lopez Flores was allowed by the government to plead to a lesser-included offense with a 5-year minimum rather than a 10-year minimum. ECF 176-1, *Plea Agreement*, p.1.

A second comparison case closely linked to Mr. Lobo, is the case of Digna Valle. The Court will recall that the government's *Fatico* hearing witness, Leonel

Rivera Maradiaga, during his testimony, alleged that Digna Valle delivered money to Mr. Lobo. (Mar. 6 Tr. 66:8-67:8). Digna Valle was part of the Valle drug trafficking organization. The Valles are described as "one of Honduras' largest transport groups." The U.S. Treasury Department estimated the Valles moved "tens of thousands of kilograms of cocaine" into the United States each month. *Valles*, InSight Crime (Nov. 17, 2015), http://www.insightcrime.org/ honduras-organized-crime-news/lvalles. The Valles were alleged by Rivera Maradiaga to have been part of the conspiracy to assassinate the Honduran drug czar in 2009. (Mar. 6 Tr. 18:12-16). Ms. Valle was sentenced for her role in the Valle drug trafficking organization to 135-months. [*United States v. Valle,* 13-cr-20897 (Dimitrouleas)(SDFL) ECF 55].

Mr. Lobo respectfully submits the following review of past sentences that will assist the Court to impose a sentence sufficient but not greater than necessary to comply with the basic aims of sentencing.

The following list identifies comparable defendants given leadership roles in large criminal organizations.

- **International Arms Trafficking - Viktor Bout – Jury Trial.** In the case of *United States v. Viktor Bout,* 08-cr-365 (SAS) (SDNY 2012), the defendant received a *25-year sentence*. Former U.S. Attorney Bharara described the defendant as "…international arms trafficking enemy number one for many years, arming some of the most violent conflicts around the globe." A person that Bharara said was "…finally brought to justice in an American court for agreeing to provide a staggering number of military-grade weapons to an avowed terrorist organization committed to killing Americans." CNN Wire Staff, April 6, 2012, *"Russian Arms Dealer Viktor Bout Handed 25-Year*

9

*Federal Sentence,*" CNN Justice, April 6, 2012. Available at: http://www.cnn.com/2012/04/05/justice/new-york-viktor-bout-case/ .

- **International Drug Trafficking - Oscar Varela Garcia a.k.a "Capachivo" – Jury Trial.** In the case of *United States v. Oscar Varela Garcia*, 99-cr-0804 (CMA) (SDFL 2011), the government alleged that the defendant was a large-scale cocaine trafficker responsible for the importation of hundreds of thousands of kilograms of cocaine into the United States over an extended period of time. It was also alleged that he was responsible for directing the brutal murders of several persons, including a U.S. government informant. After a lengthy trial, the jury reached a guilty verdict. The government first argued that the appropriate guideline was a Level 48, criminal history category I, with an extrapolated sentencing range of 673-841 months. However, the government exercised some restraint and requested a 720-month (60 year) sentence. Notwithstanding the government's request, the court in that case sentenced Varela-Garcia to *280-months (23+ years)*.

- **Central American Drug Trafficking - Jorge Mario Paredes – Jury Trial.** In the case of *United States v. Jorge Mario Paredes*, 03-cr-987 (DAB) (SDNY 2010), a large scale Guatemalan drug trafficker, alleged to have trafficked many thousands of kilograms of cocaine to the United States was sentenced, after a jury trial, to *31-years imprisonment*.

- **South American Drug Trafficking - "Sonia" the FARC Guerilla – Jury Trial.** In the case of *United States v. Cabrera Cuevas, et al.*, 03-cr-554 (JR) (D.D.C.), the defendant was convicted of conspiring to distribute cocaine intending or knowing that it would be unlawfully imported into the United States. One of the defendants, Anayibe Rojas Valderama, aka "Sonia," was alleged to have been a member of a United States designated terrorist organization, the Revolutionary Armed Forces of Colombia (FARC). At sentencing, the government argued that the amount of cocaine attributable to each defendant was "enormous" and requested sentences in excess of forty (40) years. Also highlighted was the civil war prosecuted by the FARC and how the drug trafficking was used to finance that war. "Sonia" was sentenced to *200-months (16-years and 8-months)*.

- **South American Drug Trafficking – Colombian Paramilitary Forces – Plea Agreement.** In the case of *United States v. Ramiro "Cuco" Vanoy*, 99-

cr-6153 (KMM) (SDFL), the defendant was a paramilitary commander responsible for trafficking hundreds of thousands of thousands of kilograms of cocaine to the United States, he was also responsible for the murders of hundreds in Colombia. The government agreed to a guideline plea of 235-293 months, and the court sentenced the defendant to *24-years* as part of a plea agreement.

- **South American Drug Trafficking – Jury Trial.** In the case of *United States v. Christian Borda,* 07-cr-065 (GK) (D.D.C.), the defendant was tried by jury, found guilty, and sentenced to *25-years incarceration.* The U.S. Department of Justice, in the press release announcing the sentencing described the defendant as follows:

    > Borda, a Colombian national, led a major international narcotics trafficking organization based in Colombia that transported ton-quantities of cocaine from Colombia to the United States and elsewhere via Mexico. As the leader of this drug trafficking group, Borda obtained large amounts of cocaine from Colombian sources and directed others who took part in the drug trafficking activities.

    U.S. Dept. of Justice Press Release, *Major Colombian Narcotics Trafficker Sentenced in Washington, D.C., to 25 Years in Prison for Drug Trafficking*, August 5, 2013. Available at: http://www.justice.gov/opa/pr/2013/August/13-crm-883.html (last visited November 24, 2016).

- **South American Military Official Trafficking in Drugs** – In the case of *United States v. Leonidas Molina Triana*, 05-cr-1262 (DLC) (SDNY), the defendant, a major with the Colombian National Police, was responsible for the importation of over 10-tons of cocaine into United States and sentenced to 84-months.

The next two cases discussed below are significant given the level of drug trafficking, the position in government, and the use of public position to facilitate illegal conduct. The cases involve two Colombian police officials: one a general in

the national police, the other a major in the national police.  Both were alleged to have used their high government positions to facilitate drug trafficking, and both received sentences of 13-years or less.

Former Colombian General Mauricio Santoyo (*United States v. Santoyo,* 12-217 (JCC) (EDVA 2012) was sentenced to *13-years*.  During his time with the Colombian National Police, Santoyo rose to become the chief of security for then-President Alvaro Uribe.  Described as the first case to charge, detain and imprison a Colombian general, Santoyo was implicated with several high level drug traffickers and drug trafficking organizations.  The *Santoyo* case is a prime example of public corruption in the furtherance of narco-trafficking.

The second case involved a former major in the Colombian National Police, Carlos Andrés Mesa Carrillo, who was sentenced to *36-months*.  *United States v. Mesa,* 09-cr-270 (SJ)(EDNY 2011).  Similar to Santoyo, Mesa also abused his position, and had links with high-level drug traffickers.  Additionally, Mesa was notorious for his lack of candor with U.S. law enforcement upon his arrest:  he denied receiving bribes from multiple drug trafficking organizations; he denied disclosing information about DEA investigations; and, denied his wrongdoing while collecting properties, and luxury items.  The most dramatic deception was his failure to reveal his leaking of information that later allowed a drug trafficker to assassinate a government informant.  Mesa also received money from a large scale drug trafficker for information about the drug trafficker's listing on the U.S. Treasury's OFAC list.

Mesa's drug trafficking links were described on the DEA web-page as a "responsible for financing and coordinating multi-ton cocaine shipments via speedboats, fishing vessels, and airplanes to the United States via Ecuador and Mexico. Since 2008, he most likely has obtained and imported over 31,000 kilograms of cocaine to the United States, and is purportedly the primary source of supply of cocaine for the Sinaloa Cartel in Mexico." *Narcotics Reward Program*, U.S. Department of State, Bureau Of International Narcotics And Law Enforcement Affairs, as published at: http://www.state.gov/j/inl/narc/rewards/ 171614.htm (last visited on May 12, 2017).

Disturbingly, Mesa was head of general investigations for the Colombian equivalent of the DEA or FBI for 12-years. He was aware of investigations and met with drug traffickers and gave a steady stream of information. In exchange for his information he received money, from traffickers.

Finally, Mr. Lobo respectfully asks the Court to conduct a sentence disparity analysis when considering criminal forfeiture and any fine. Specifically, Mr. Lobo asks the Court to analyze the recommended forfeiture amounts and recommended fines for defendants Devis Leonel Rivera Maradiaga and Javier Rivera Maradiaga.

### III. BOP Placement Recommendation

Mr. Lobo respectfully asks the Court to include in the judgment and commitment order, a recommendation to the Bureau of Prisons that Mr. Lobo be designated to a facility in the State of Florida, specifically the metropolitan Miami

area.  The basis for this request is the ability of family to visit him at a georgraphic location near direct flights to and from Honduras.

Respectfully submitted,

                            RETURETA & WASSEM, P.L.L.C.

By: _____
     Manuel J. Retureta, Esq.
     300 New Jersey Ave., NW, Suite 900
     Washington, D.C.  20001
     202.450.6119
     MJR@RETURETAWASSEM.COM
     *Defense Counsel for Fabio Lobo*

cc:  All parties via ECF filing.