```
                                                    USDC SDNY
                                                    DOCUMENT
UNITED STATES DISTRICT COURT                        ELECTRONICALLY FILED
SOUTHERN DISTRICT OF NEW YORK                       DOC #:_____
------------------------------------------------- X DATE FILED: 06/30/17
                                                :
UNITED STATES OF AMERICA,                       :
                              Plaintiff,        :
                                                :   15 Cr. 174 (LGS)
                -against-                       :
                                                :   OPINION AND ORDER
FABIO PORFIRIO LOBO, et al.,                    :
                              Defendants.       :
------------------------------------------------- X
```

LORNA G. SCHOFIELD, District Judge:

Defendant Fabio Porfirio Lobo pleaded guilty, without a plea agreement, to one count of conspiring to import into the United States and to manufacture and distribute, intending and knowing that it would be unlawfully imported into the United States, five kilograms or more of cocaine from at least 2009 through July 2014. *See* 21 U.S.C. §§ 952, 959, 960, 963. It is undisputed that the conspiracy involved more than 450 kilograms of cocaine, which results in a base offense level of 38 under U.S.S.G. § 2D1.1(c)(1), and that Defendant has a Criminal History Category of I.

Defendant challenges four proposed sentencing enhancements to the offense level:

(1) a three-level enhancement pursuant to U.S.S.G. § 3B1.1(b) on the basis that Defendant was a manager or supervisor in a criminal activity that involved five or more participants or was otherwise extensive;

(2) a two-level enhancement pursuant to U.S.S.G § 2D1.1(b)(15)(C) on the basis that the aggravating-role adjustment is appropriate under § 3B1.1(b), and Defendant was directly involved in the importation of cocaine;

(3) a two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) on the basis that dangerous weapons (e.g., firearms) were possessed; and

(4) a two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(11) on the basis that Defendant bribed, or attempted to bribe, a Honduran law enforcement officer to facilitate the commission of the offense.

In its post-hearing submissions, the Government challenges the applicability of a three-level reduction pursuant to U.S.S.G. § 3E1.1 for acceptance of responsibility. The Government also seeks an order of forfeiture in the amount of $326,667 pursuant to 21 U.S.C. §§ 853(a), 970. Lobo argues that the three-level reduction is appropriate and that the forfeiture amount, if any, should not exceed $50,000.

On March 6 and 16, 2017, the Court held a hearing pursuant to *United States v. Fatico*, 579 F.2d 707 (2d Cir. 1978), to resolve disputed facts relevant to Lobo's sentencing. The Court's findings regarding the enhancements, the acceptance-of-responsibility reduction and the amount of forfeiture are stated below.

I. **BACKGROUND**

The sole witness at the hearing was Devis Leonel Rivera Maradiaga ("Rivera"), who was a leader of the Honduran drug trafficking organization, the *Cachiros*. Rivera testified that, after Defendant's father became President of Honduras in 2010, Defendant provided security and logistical support to the *Cachiros* in connection with two separate multi-hundred-kilogram shipments of cocaine. Rivera also testified that he and his brother established several front companies and that, with Defendant's assistance, he paid bribes in exchange for Honduran government entities' issuing contracts to one of those front companies. In addition, Rivera testified that he paid Defendant money for information that helped the *Cachiros* avoid seizure of their assets by the Honduran government. The Government introduced as exhibits transcripts of recordings made between 2013 and 2015 of conversations involving Defendant and either Rivera, who had begun cooperating with the DEA in 2013, or other confidential sources. In the recordings, Defendant agrees to offer assistance for what he was told was a shipment of 2,500 kilograms of cocaine.

## II.   STANDARD

"The Government bears the burden of proving the facts supporting the application of a Guidelines provision, and it must do so by a preponderance of the evidence." *United States v. Kent*, 821 F.3d 362, 368 (2d Cir. 2016). Similarly, the Government must prove the amount of proceeds relevant to forfeiture by a preponderance of the evidence. *See United States v. Roberts*, 660 F.3d 149, 165 (2d Cir. 2011). The Federal Rules of Evidence do not apply at sentencing proceedings, *United States v. Gushlak*, 728 F.3d 184, 197 n.10 (2d Cir. 2013) (citing Fed. R. Evid. 1101(d)(3)), and a court may consider any relevant information, "provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a); *see United States v. Juwa*, 508 F.3d 694, 701 (2d Cir. 2007) ("[F]actual matters considered as a basis for sentence must have some minimal indicium of reliability beyond mere allegation." (internal quotation marks omitted)); *accord United States v. Scott*, 614 F. App'x 567, 569 (2d Cir. 2015) (summary order).

## III.   DISCUSSION

Considering the entire record, the Government has carried its burden to prove facts sufficient to support the sentencing enhancements at issue by a preponderance of the evidence, except for the bribery enhancement under § 2D1.1(b)(11). Defendant has clearly demonstrated acceptance of responsibility under § 3E1.1(a). As for the order of forfeiture, the Government has carried its burden to justify a money judgment in the amount of $266,667, rather than the $326,667 sought.

### A.   Credibility of Rivera

The Court finds Rivera credible in light of the entirety of the record and observations of his tone, demeanor and straightforward answers. Defense counsel's cross-examination failed to

3

undermine Rivera's credibility as to key portions of his testimony, especially regarding Defendant's involvement in the two multi-hundred-kilogram cocaine shipments in 2012 and 2013.  His post-hearing arguments are similarly unavailing.

First, although Rivera testified that he "caused" the murder of 78 individuals, this does not demonstrate, as defense counsel argues, that Rivera was attempting to obfuscate his criminal conduct.  Rather, Rivera's testimony reflects his varying degrees of involvement in the murders that the *Cachiros* committed.

Second, Rivera's credibility is not meaningfully impugned by Defendant's evidence -- submitted after the hearing -- that Rivera founded a front company, INRIMAR, in June 2009 even though portions of Rivera's testimony suggest it was founded later.  Specifically, Rivera testified that Defendant's father recommended that Rivera establish INRIMAR "in 2009" although he could not "remember the exact date."  Defendant's counsel then asked "Was it the beginning of 2009?  The end of 2009?" to which Rivera responded:  "It was after [Defendant's father's] recommendation, it was after he became president, sir."  Defendant's father became a candidate for president in January 2009, was elected in November 2009 and assumed office in January 2010.  Contrary to Defendant's contention, Rivera's statements do not establish that he intentionally lied about a series of events that occurred in 2009, but only that, approximately eight years after the fact, he could not recall precisely when he established INRIMAR.  Further, his misstatement was immaterial, as testimony regarding INRIMAR was not, as Defendant contends, the "cornerstone" of the sentencing enhancements but rather background to the conspiracy.

Although Rivera's testimony was the sole source of direct evidence for some conduct, some of his statements are undisputed and others are bolstered by other evidence.  It is

undisputed that Defendant participated in meetings with Honduran officials in which they discussed a maritime drug-trafficking venture for which Defendant received approximately $50,000.  The recordings made while Rivera was cooperating with the DEA also corroborate his testimony about Defendant's prior role in the conspiracy; in those recordings, Rivera and Defendant discuss Defendant's providing security and escorting the cocaine shipment "just like the previous times."  Also, Defendant concedes his participation in the transportation of hundreds of kilograms of cocaine.  In his post-hearing submission, Defendant "does not object" to the Government's proposed findings of fact (based on Rivera's testimony) regarding Lobo's involvement in a 400-kilogram shipment in 2012 and a 1,000-kilogram shipment in 2013.

### B. Aggravating Role: Manager or Supervisor – U.S.S.G. § 3B1.1(b)

Section 3B1.1(b) provides for a three-level enhancement "[i]f the defendant was a manager or supervisor (but not an organizer or leader) [of the offense,] and the criminal activity involved five or more participants or was otherwise extensive."  U.S.S.G. § 3B1.1(b). "[E]vidence of a defendant's direct and immediate control over other participants provides strong support for a role enhancement.  A defendant may properly be considered a manager or supervisor if he exercised some degree of control over others involved in the commission of the offense."  *United States v. Diamreyan*, 684 F.3d 305, 309 (2d Cir. 2012) (internal quotation marks omitted); *accord United States v. Caballero*, 672 F. App'x 72, 75 (2d Cir. 2016) (summary order), *cert. denied,* 137 S. Ct. 1599 (2017).  "[T]he defendant need not be the manager of more than one other person."  *Diamreyan*, 684 F.3d at 309.

The Government has proved by a preponderance of the evidence that Lobo was a manager or supervisor.  The evidence shows that he used members of his security detail to help escort the 1,000-kilogram load of cocaine in 2013.  Specifically, when he met with Rivera,

5

Defendant brought along three SUVs, all of which were driven by men wearing Honduran military uniforms.  The three SUVs escorted the truck carrying the cocaine along the highway.  During the escort, Defendant's car stopped at a police checkpoint, he told the driver to turn the siren on and then Defendant "talk[ed] with the police officers" as the truck containing the cocaine passed.  The evidence of his recruitment of and supervision over the security detail establishes that Defendant exercised some degree of control over other participants involved in the commission of the offense.  *See United States v. Russell*, 513 F. App'x 67, 70 (2d Cir. 2013) (summary order) (affirming enhancement where defendant recruited one person to act as his driver for a trip to buy drugs and controlled the driver's activities during the offense).

Defendant's exercise of some degree of control is further evidenced by his recorded statements that he would bring "the same" security detail, when Rivera raised the possibility of assisting with the purported 2,500-kilogram drug shipment.  In addition, Defendant's participation was not limited to his use of the security detail; he also met with Government officials, military personnel and Honduran National Police in an effort to help the *Cachiros* avoid interdiction of their cocaine shipments or seizures of its assets.  *See United States v. Hertular*, 562 F.3d 433, 449 (2d Cir. 2009) (affirming enhancement under § 3B1.1 where the defendant "dealt with the various corrupt high-ranking officials in the Belize government who were integral to the conspiracy's operations").

The Court also finds that the criminal activity involved five or more participants or was otherwise extensive.  The evidence shows that the conspiracy included at least the following: Defendant, his security detail, Rivera (before he began cooperating), Rivera's brother (before he began cooperating), the six co-defendants who were present at the June 2014 meeting and numerous other drug traffickers.

Defendant argues that the enhancement does not apply because the *Cachiros* "called, directed, and dismissed Lobo as they needed him." However, "[t]he fact that other persons may play still larger roles in the criminal activity does not preclude a defendant from qualifying for a § 3B1.1(b) enhancement." *Id.* The Government has proved by a preponderance of the evidence that Defendant's conduct warrants the enhancement.

### C. Specific Offense Characteristic: Direct Involvement in Importation – U.S.S.G. § 2D1.1(b)(15)(C)

Section 2D1.1(b)(15)(C) adds two levels to the base offense level if (1) "the defendant receives an adjustment under § 3B1.1 (Aggravating Role)" and (2) "[t]he defendant was directly involved in the importation of a controlled substance." U.S.S.G. § 2D1.1(b)(15)(C). The Application Note states that this subsection applies if "the defendant is accountable for the importation of a controlled substance under [U.S.S.G. § 1B1.3(a)(1)(A)], i.e., the defendant committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused the importation of a controlled substance." *Id.* § 2D1.1 cmt. n.20.

The Government has proved by a preponderance of the evidence facts sufficient to warrant application of this enhancement. First, as discussed above, Defendant will receive an adjustment under § 3B1.1(b). Second, Defendant's direct involvement in the importation of cocaine is established by his participation in the 2012 and 2013 shipments of cocaine. For both shipments, Defendant was personally involved in transporting the cocaine, which included riding in a car that escorted the trucks carrying the cocaine. As Rivera testified, the cocaine shipped by the *Cachiros* was distributed to the United States.

### D. Specific Offense Characteristic: Firearm Possession – U.S.S.G. § 2D1.1(b)(1)

Section 2D1.1(b)(1) imposes a two-level enhancement "[i]f a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). "[T]he defendant need not have

7

had personal possession, or even actual knowledge of the weapon's presence; the enhancement is required so long as the possession of the firearm was reasonably foreseeable to the defendant." *United States v. Batista*, 684 F.3d 333, 343 (2d Cir. 2012). "Accordingly, if one member of a narcotics conspiracy possessed a firearm in furtherance of the conspiracy, the other members of the conspiracy who reasonably could have foreseen such possession are chargeable with possession under § 2D1.1(b)(1)." *Id.* "[O]nce the government has established that a weapon's presence was reasonably foreseeable to the defendant during conduct relevant to the offense at issue, the enhancement will apply, unless the defendant demonstrates that it is clearly improbable that the weapon was connected with the drug offense." *United States v. Smythe*, 363 F.3d 127, 128 (2d Cir. 2004) (alterations omitted); *accord United States v. Welch*, 641 F. App'x 37, 41 (2d Cir. 2016) (summary order).

The Government has proved by a preponderance of the evidence that numerous dangerous weapons (i.e., firearms) were possessed. During the 2013 shipment, Defendant and Rivera travelled in an SUV together. In that SUV, the driver was armed, Rivera carried a pistol, and an AR-15 rifle was in the center console. These weapons were possessed during conduct relevant to the drug offense as Defendant and his security detail were helping to escort the shipment of cocaine. *See* U.S.S.G. § 1B1.3(a)(1)(A). Defendant has not shown that it was clearly improbable that any weapons contained in his SUV, including Rivera's gun, were unconnected to the 1,000-kilogram shipment of cocaine.

### E. Specific Offense Characteristic: Bribery of Law Enforcement – U.S.S.G. § 2D1.1(b)(11)

Section 2D1.1(b)(11) imposes a two-level enhancement for any drug trafficking offense "[i]f the defendant bribed, or attempted to bribe, a law enforcement officer to facilitate the commission of the offense." U.S.S.G. § 2D1.1(b)(11).

The parties dispute whether § 2D1.1(b)(11) can be applied to foreign law enforcement officers. Even assuming -- without deciding -- the enhancement applies to bribes paid to foreign law enforcement officers, the Government has not carried its burden to prove the enhancement is warranted on this record.

The Government points to alleged money that Lobo paid to General Julián Pacheco Tinoco, a Honduran military official who Defendant's father said would provide protection for the *Cachiros*. The Government's evidence that General Pacheco Tinoco is a "law enforcement officer" is an affidavit from a DEA agent who attests that the General was "a General in the Intelligence Division of the Honduran Armed Forces" and the Director of the newly created Honduran agency referred to as the National Bureau of Investigation and Intelligence ("DNII"). The DEA agent further attests that he "consider[s] General Pacheco Tinoco to have been a law enforcement officer" because (1) the DNII is responsible for conducting criminal investigations in Honduras and (2) it was common for military officials to participate in law enforcement operations in Honduras.

The Government has not met its burden of showing that the General was a law enforcement officer at the pertinent time. It fails to cite to any legal authority, or other source, that addresses General Pacheco Tinoco's responsibilities as conferred by Honduran law. Further, the Government's contention is undermined in part by an article adduced by Defendant containing an interview with General Pacheco Tinoco in which he acknowledges Honduras has "just one institution in charge of public security," i.e., the Honduran National Police. The Government has failed to show facts sufficient to justify the bribery enhancement based on any payments to General Pacheco Tinoco.

The Government's other evidence and arguments are also unavailing. First, its reference to the "the bribe-heavy manner" in which Defendant and Rivera operated -- without more -- does not establish by a preponderance of the evidence that Defendant bribed or attempted to bribe the law enforcement personnel with whom he spoke in furtherance of his conspiracy. Second, the Government has not carried its burden based on the alleged bribes that Rivera paid to Honduran police, as Rivera's testimony on this subject does not show by a preponderance of the evidence that Defendant himself "bribed, or attempted to bribe" law enforcement. *See* U.S.S.G. § 1B1.3(a)(1)(B) (providing that acts and omissions of others constitute relevant conduct for purposes of sentencing enhancement "[u]nless otherwise specified"). Third, the Court finds that the June 2014 meeting at which the co-defendants, who were Honduran National Police, discussed receiving $100,000 per person to provide security for the purported 2,500 kilogram drug shipment is insufficient because the Government fails to cite any evidence that Defendant spoke at this meeting or otherwise personally assented to the bribes. The Government has failed to carry its burden with respect to the enhancement under U.S.S.G. § 2D1.1(b)(11).

**F.     Acceptance of Responsibility: U.S.S.G. § 3E1.1**

Section 3E1.1 provides for a two-level downward adjustment to a defendant's combined offense level if "the defendant clearly demonstrates acceptance of responsibility." U.S.S.G. § 3E1.1(a). The Application Note states that "a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a)." U.S.S.G. § 3E1.1 cmt. n.1. "However, a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." *Id.* "Whether the defendant has accepted responsibility is a factual question, and [a] district court's determination in this regard

10

should not be disturbed unless it is without foundation." *United States v. Gilleo*, 16-861-CR, 2017 WL 1087983, at *3 (2d Cir. Mar. 21, 2017) (summary order) (quoting *United States v. Taylor*, 475 F.3d 65, 68 (2d Cir. 2007)).

An additional one-level reduction is appropriate (1) if the defendant qualifies for a decrease under § 3E.1.1(a), (2) the offense level is 16 or greater and (3) "upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty." U.S.S.G. § 3E1.1(b). While a government motion is generally required under § 3E1.1(b), *United States v. Lee*, 653 F.3d 170, 173 (2d Cir. 2011) (citing U.S.S.G. § 3E1.1 cmt. n.6), "a sentencing court is permitted to grant the additional point reduction despite the absence of a government motion . . . where the government's refusal to move is based on an unconstitutional motive." *Id.* It is unlawful for the government to refuse to move for a third-point reduction solely "on the grounds that it had been required to prepare for a *Fatico* hearing." *Id.* "[Section 3E1.1(b)] instructs the Government to determine simply whether the defendant has 'timely' entered a 'plea of guilty' and thus furthered the guideline's purpose in that manner. It does not permit the Government to withhold a motion for a one-level reduction because the defendant has declined to perform some other act to assist the Government." *Id.* at 175 (some internal quotation marks omitted).

Defendant has clearly demonstrated acceptance of responsibility. He "truthfully admitt[ed] the conduct comprising the offense[] of conviction," U.S.S.G. § 3E1.1 cmt. n. 1(A), as he admits he was involved in a conspiracy involving at least 450 kilograms of cocaine. Defendant was entitled to request a *Fatico* hearing, and his challenge to the four sentencing enhancements is not frivolous. *See United States v. Austin*, 17 F.3d 27, 31 (2d Cir. 1994)

(defendant's "failure 'to volunteer, or affirmatively admit' [conduct beyond the offense of conviction] cannot serve as a basis for denying a reduction for acceptance of responsibility" (citing U.S.S.G. § 3E1.1 cmt. n. 1(a))).  Courts have routinely found that a defendant is entitled to a reduction under § 3E1.1(a) even though, as here, he has challenged sentencing enhancements.  *See, e.g.*, *United States v. Briceno*, No. 01 Cr. 943, 2003 WL 22025870, at *1, *5–6 (S.D.N.Y. Aug. 29, 2003) (granting reduction under § 3E1.1(a) despite a *Fatico* hearing and the court not being "convinced that the Defendant has been completely truthful about his involvement with drugs and his role in the events at issue").  Further, this is not the case in which the lateness of the defendant's plea weighs against granting the reduction.  Defendant pleaded guilty almost two months before a jury trial was set to begin.  *See United States v. Kumar*, 617 F.3d 612, 637 (2d Cir. 2010) ("While under certain circumstances the lateness of a plea might indeed weigh against the defendant, those circumstances are not present in this case.  For example, [the defendant's] plea came neither after the [g]overnment . . . concluded presenting its case, . . . during the jury's deliberations, nor on the morning of trial . . . ." (internal quotation marks omitted)).

Accordingly, a two-level reduction pursuant to § 3E1.1(a) is justified on this record.  To the extent the Government still objects to an additional one-level reduction under § 3E1.1(b) in light of this finding, it must file a letter by **July 10, 2017**, stating its reasons.  The Government is reminded that it "should not withhold such a motion based on interests not identified in § 3E1.1, such as whether the defendant agrees to waive his or her right to appeal."  U.S.S.G. § 3E1.1 cmt. n.6.  The Government's objection, if any, will be addressed at the sentencing hearing.

## G. Forfeiture Order

Section 853(a)(1) of Title 21 of the United States Code "mandates forfeiture of 'any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of' certain drug crimes." *Honeycutt v. United States*, No. 16-142, 2017 WL 2407468, at *3 (U.S. June 5, 2017). This forfeiture provision applies to Defendant's offense of conviction. *See* 21 U.S.C. § 970. In *Honeycutt*, the Supreme Court held that § 853(a) does not permit "joint and several liability for forfeiture judgments," *id.* at *4–5, thereby abrogating Second Circuit case law. *See, e.g.*, *United States v. Benevento*, 836 F.2d 129, 130 (2d Cir. 1988). Accordingly, "[f]orfeiture pursuant to § 853(a)(1) is limited to property the defendant himself actually acquired as the result of the crime." *Honeycutt*, 2017 WL 2407468, at *9.

The Government seeks forfeiture in the amount of $326,667, which it contends Defendant obtained directly or indirectly as a result of his crime.[1] For the following reasons, the Court finds that the Government has proved by a preponderance of the evidence that Defendant actually acquired $266,667 as a result of the crime of conviction based on the following five events.

First, Honduran congressman Fredy Renán Nájera Montoya paid Defendant $50,000, which Defendant admits he received in exchange for participating in several meetings to discuss a proposed maritime drug-trafficking venture in 2012 or 2013.

---

[1] The Government initially sought forfeiture in the amount of $13.11 million. Of this amount, $12.6 million equaled the *Cachiros*' total profits from the two shipments of cocaine that the Government contended was attributable to Defendant under a theory of joint and several liability. Pursuant to the Court's Order, the parties submitted supplemental briefing in light of the Supreme Court's decision in *Honeycutt*, and the Government filed a revised preliminary order of forfeiture/money judgment.

Second, as Rivera testified, Defendant received $90,000 in exchange for helping to personally escort the multi-hundred-kilogram shipments of cocaine in 2012 and 2013. For the 2012 shipment, Rivera paid Defendant at least $20,000 in cash and paid $20,000 to have armor installed on a car that he gave to Defendant. For the 2013 shipment, Rivera paid Defendant $50,000 in cash.

Third, Rivera paid Defendant $16,667 in exchange for Defendant helping Rivera and his brother avoid seizures of their assets by the Honduran government. Rivera testified about a meeting in a hotel in which he paid Defendant for a list of properties and bank accounts that the Honduran government planned to seize. Rivera gave Defendant between $50,000 and $70,000, which Rivera explains constituted payment for three people: Defendant, Defendant's cousin, who was the head of the government agency that was planning to seize the property, and a Honduran congressman. Rivera used this information to remove assets, such as weapons and money, from the properties that were to be seized. Defendant contends that any money Rivera paid to Defendant for information regarding asset seizures was not part of the conspiracy to import cocaine. This argument is unavailing because Defendant acquired this money as a result of the conspiracy. The payments compensated Defendant for acts that were in furtherance of the drug importation conspiracy as Defendant enabled Rivera to conceal assets Defendant knew derived from the *Cachiros*' cocaine shipments, which were imported into the United States via Mexico with Defendant's assistance. *See United States v. Payne*, 591 F.3d 46, 61 (2d Cir. 2010) ("[A] single conspiracy is not transformed into multiple conspiracies merely by virtue of the fact that it may involve two or more phases or spheres of operation, so long as there is sufficient proof of mutual dependence and assistance." (internal quotation marks omitted)). Thus, the

Government has shown by a preponderance that Defendant actually acquired $16,667 as a result of this offense conduct.

Fourth, Rivera gave Defendant a bag containing approximately $10,000 after the Honduran government effected the seizures in 2013. Rivera explained that during the conversation, Rivera thanked Defendant for the information regarding the properties that were seized and asked Defendant to help him avoid extradition to the United States, as Defendant and his father had allegedly promised. As with the payment made before the seizures, this amount is subject to forfeiture as Defendant actually acquired this money as a result of his drug importation conspiracy. *See id.*

Fifth, as Rivera testified, around the time Defendant helped Rivera with the cocaine shipment in 2012, he also asked Rivera to introduce him to other drug traffickers so that Defendant "could do the same sort of operation he had done" with Rivera. Rivera subsequently arranged for Defendant to meet Carlos Lobo, another Honduran drug trafficker. Carlos Lobo paid Defendant $100,000 and, in exchange, Defendant agreed to help Carlos Lobo with his properties that had been seized and introduce Carlos Lobo to the secretary of Oscar Alvarez, a Honduran official who had been conducting investigations of the *Cachiros*. The evidence establishes that the $100,000 Defendant acquired was a result of his crime, namely, the drug importation conspiracy with Rivera.

By contrast, the Government failed to prove that Defendant actually acquired at least $60,000 in kickbacks for government contracts. The Government cites Rivera's testimony regarding a scheme in which three Honduran government agencies would issue contracts to Rivera's front companies, which were used to launder drug trafficking proceeds. Rivera testified that he paid for the contracts between $300,000 and $350,000 to "the Lobos," i.e., Defendant and

his father, and the heads of three government offices.  The Government argues that Defendant, as one of five recipients, should be credited with $60,000, which is one-fifth of the $300,000. However, the Government has failed to show by a preponderance of the evidence the amount, if any, that Defendant actually received.  Rivera testified in the affirmative when asked if it was his "understanding that part of the kickbacks were paid to" Defendant.  He did not elaborate on what portion of these kickbacks Defendant received, or what formed the basis of his understanding, nor did Rivera testify that he, or anyone else, gave Defendant money in connection with the kickbacks.  Thus, the Government did not prove by a preponderance of the evidence that Defendant actually acquired $60,000 in connection with the kickback scheme.

Accordingly, the Government has established that Defendant is subject to forfeiture in the amount of $266,667 pursuant to 21 U.S.C. §§ 853(a), 970.

## IV.  CONCLUSION

For the reasons stated above, the Court will apply the sentencing enhancements pursuant to U.S.S.G. § 3B1.1(b), § 2D1.1(b)(15)(c) and § 2D1.1(b)(1) in its calculation of the offense level under the Guidelines, but will not apply § 2D1.1(b)(11).  The Court also will apply the reduction under § 3E1.1(a) and reserves judgment as to whether an additional reduction pursuant to § 3E1.1(b) is warranted.  To the extent the Government still objects to an additional one-level reduction under § 3E1.1(b), it must file a letter by **July 10, 2017**, stating its reasons.

The Government also has proved by a preponderance of evidence that forfeiture in the

amount of $266,667 is warranted.  A preliminary order of forfeiture pursuant to Federal Rule of

Criminal Procedure 32.2(b) will issue separately.

Dated:  June 30, 2017
       New York, New York

                                                **LORNA G. SCHOFIELD**
                                       **UNITED STATES DISTRICT JUDGE**