H958LOBS

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                          15 Cr. 174 (LGS)

5    FABIO PORFIRIO LOBO,

6                   Defendant.

7    ------------------------------x

8                                         September 5, 2017
                                          4:50 p.m.
9
     Before:
10
                    HON. LORNA G. SCHOFIELD
11
                                          District Judge
12
                          APPEARANCES
13
     JOON H. KIM
14        Acting United States Attorney for the
          Southern District of New York
15   BY:  MATTHEW J. LAROCHE
          EMIL J. BOVE III
16        Assistant United States Attorneys

17   RETURETA & WASSEM, PLLC
          Attorneys for Defendant
18   BY:  MANUEL RETURETA

19
     Also present:  Spanish language interpreters:
20                  Francisco Olivero
                    Dagoberto Orrantia
21

22

23

24

25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

H958LOBS

```
 1                  (Case called)

 2                  THE DEPUTY CLERK:  Counsel, please state your name for

 3      the record.

 4                  MR. BOVE:  Good afternoon, your Honor.  Emil Bove and

 5      Matt Laroche for the government.

 6                  THE COURT:  Good afternoon.

 7                  MR. RETURETA:  Good afternoon, your Honor.  Matt

 8      Retureta, on behalf of Mr. Porfirio Lobo, who is present.

 9                  THE COURT:  Good afternoon.

10                  Good afternoon, Mr. Lobo.

11                  I see that we are assisted by Spanish interpreters.

12      So I would just ask, Mr. Lobo, as I usually do, if there is

13      anything that you can't hear or understand in the translation,

14      please let me know and I will have it corrected.  OK?

15                  THE DEFENDANT:  OK.

16                  THE COURT:  I would also ask the translators, if there

17      is anything that you can't hear or understand from the

18      defendant, please let me know and we will try and remedy it.

19                  THE INTERPRETER:  Yes, your Honor.

20                  THE COURT:  We are here today to impose sentence in

21      the case of United States v. Fabio Porfirio Lobo.  Mr. Lobo

22      pleaded guilty to conspiracy to import cocaine to the United

23      States and to manufacture and distribute cocaine, pursuant to

24      what is called a Pimentel letter, dated April 4, 2016.

25                  In preparation for today's proceeding, I have relied
```

H958LOBS

on the updated presentence report, which was dated July 17,

2017.  I also conducted a so-called Fatico hearing on March 6

and 16, reviewed related submissions from the government and

defense, and after the hearing ruled on the requested

sentencing guidelines enhancements.

          I also have reviewed the defendant's submissions,

which were filed on May 15, 19, June 7 and July 19, 2017, and

included letters from Mr. Lobo's wife, Cynthia Cardona Lobo,

and also Ora Lobo, his daughter.

          I also have the following documents, and because they

are numerous I won't enumerate each one, but I will describe

them, and I also have translations that were provided by Mr.

Retureta.  I have diplomas reflecting the defendant's

educational degrees and work history.  I also have documents

regarding his wife's salary.  I have documents regarding his

indebtedness.

          Also, there was one document that wasn't translated.

I just had one of the court translators translate it for me,

and it was a certificate attesting that Mr. Lobo holds the

power of attorney for a particular bank.

          I also have the government's submissions, dated May

19, June 8, and July 10.

          I have reviewed everything that I have just

enumerated.  Is there anything else that I should have received

and reviewed?

Case 1:15-cr-00174-LGS Document 497-1 Filed 02/08/21 Page 4 of 27
Case 1:15-cr-00174-LGS Document 252 Filed 09/19/17 Page 4 of 27          4
H958LOBS

1          MR. BOVE:  Not from our perspective.

2          MR. RETURETA:  Not from the defense.

3          THE COURT:  Mr. Retureta, have you reviewed the

4    presentence report and discussed it with your client?

5          MR. RETURETA:  We have, your Honor.

6          THE COURT:  Mr. Lobo, have you reviewed and had

7    translated for you the presentence report?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  Have you discussed it with Mr. Retureta?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  Have you had the opportunity to go over

12    with him any errors in the report or anything that needs to be

13    taken up with the Court?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  Let me ask the government, Mr. Bove, have

16    you reviewed the presentence report?

17          MR. BOVE:  Yes, Judge.

18          THE COURT:  Putting aside the calculation of the

19    sentencing guidelines, are there any objections to the report

20    regarding its factual accuracy?

21          MR. BOVE:  No, your Honor.

22          THE COURT:  Mr. Retureta, any objections apart from

23    the sentencing guidelines?

24          MR. RETURETA:  No, your Honor.

25          THE COURT:  I direct that a complete and corrected

H958LOBS

| 1 | copy of the report be prepared for the Bureau of Prisons and |
| 2 | the sentencing commission.  The report will be made a part of |
| 3 | the record in this matter and placed under seal.  If an appeal |
| 4 | is taken, counsel on appeal may have access to the report |
| 5 | without further application to the court. |
| 6 | Now, turning to the sentencing guidelines, although |
| 7 | Mr. Lobo, as you know, the court is no longer required to |
| 8 | accept the recommendation of the sentencing guidelines, we are |
| 9 | required to consider it, and in order to do that, the Court has |
| 10 | to calculate it accurately. |
| 11 | So I have consulted the 2016 edition of the sentencing |
| 12 | guidelines manual, and as I described in greater detail in my |
| 13 | written opinion following the Fatico hearing, I find that the |
| 14 | total offense level is 42.  And that is based on a base offense |
| 15 | level of 38, plus the following, as I previously outlined: |
| 16 | Three points in addition for being a manager or supervisor |
| 17 | under guideline 3B1.1(b), two points in addition for direct |
| 18 | involvement in importation under guideline 2D1.1(b)(15)(C), and |
| 19 | two points in addition for firearm possession under |
| 20 | 2D1.1(b)(1).  Then subtracted from that total, I have taken off |
| 21 | a total of three points for acceptance of responsibility under |
| 22 | Section 3E1.1(a).  I also find that the criminal history |
| 23 | category is I.  The updated presentence report reflects my |
| 24 | rulings on these guideline enhancements and agrees with my |
| 25 | calculation of the sentencing guidelines. |

H958LOBS

 1              Is there any objection to my calculation of the

 2      sentencing guidelines given my rulings?

 3              MR. BOVE:  No, your Honor.  Thank you.

 4              MR. RETURETA:  No, your Honor.

 5              THE COURT:  Based on that, I find that the total

 6      offense level is 42, the criminal history category is I.

 7              So what all that means, Mr. Lobo, is that the

 8      recommendation under the guidelines is a term of imprisonment

 9      for 360 months, which is 30 years, at the low end, to a maximum

10      of life.  The guidelines also recommend a fine of 25,000 to $10

11      million, supervised release of five years, with no possibility

12      of probation.

13              Under the statute, which is different from the

14      guidelines recommendation, I am required to sentence you to at

15      least ten years, up to a maximum of life.  The fine under the

16      statute is a maximum of $10 million, supervised release is a

17      mandatory minimum of five years and a maximum of life, with no

18      eligibility for probation.  There is also a mandatory special

19      assessment of $100.

20              What is the government's position on restitution?

21              MR. BOVE:  We are not seeking restitution.

22              THE COURT:  I have issued a separate preliminary order

23      of forfeiture in the amount of $266,667.  Do I need to do a

24      final order of forfeiture or will the preliminary order

25      suffice?

Case 1:15-cr-00174-LGS  Document 497-1  Filed 02/08/21  Page 7 of 27
Case 1:15-cr-00174-LGS  Document 252  Filed 04/19/17  Page 7 of 27          7
H958LOBS

```
 1              MR. BOVE:  We believe the preliminary order will
 2    suffice following today's proceedings.
 3              THE COURT:  Thank you.
 4              Are there any objections to the sentencing options I
 5    have outlined?
 6              MR. BOVE:  No, Judge.
 7              MR. RETURETA:  No, your Honor.
 8              THE COURT:  So my question is a technical one, and
 9    that is, does any counsel believe that an upward or downward
10    departure, as that term is defined in the sentencing
11    guidelines, is warranted?  And that's different from a
12    variance.
13              MR. BOVE:  We are not seeking any departures, your
14    Honor.
15              MR. RETURETA:  Nor is the defense.
16              THE COURT:  While I have authority to depart, I
17    decline to do so, but as I said, that leaves apart the
18    possibility of a variance.  I know that defense counsel will
19    want to be heard on that, but let me hear from the government
20    first.
21              Mr. Bove, would you like to be heard with respect to
22    sentencing?
23              MR. BOVE:  Yes, Judge.  Thank you.
24              We think based on the evidence that was presented at
25    the Fatico hearing in this case a guideline sentence is
```

H958LOBS

1    appropriate.  I would like to focus on three features today or

2    three considerations that support that outcome:  Drug quantity,

3    other aggravating characteristics of the offense, and the

4    importance of general deterrence.

5            The drug quantity here is staggering.  The defendant,

6    as you have already found, is to be held responsible for about

7    4.4 tons of cocaine.  That's almost ten times the maximum

8    threshold contemplated by the sentencing guidelines.  I think

9    in a case like this, where we are talking about such enormous

10   quantities of drugs, it's easy to lose sight of the fact that

11   just one of those kilograms, one of the 4,400 kilos that we are

12   talking about, contains about one thousand personal use

13   quantities of cocaine that were intended to be sent into this

14   country and to impact the people here in all the ways that

15   these dangerous drugs do.

16           But as striking as the 4.4 tons are, quantity is not

17   the most extraordinary feature of this case.  We have

18   established that the defendant was involved in nothing short

19   than state-sponsored drug trafficking.  We have established

20   that his co-conspirators involved his father, the sitting

21   president of Honduras, as well as sitting Honduran congressmen,

22   including Oscar Najera.  Somewhat remarkable, the defendant

23   concedes that there was an entirely separate drug trafficking

24   venture involving a different Honduran congressman, Oscar

25   Najera.

H958LOBS

1              And the defendant didn't just provide assurances or

2    safe passage for drug loads.  There was evidence, your Honor,

3    that there were times where the Cachiros reached out to him to

4    give him advance notice of a drug load so that he can be on

5    call in case something happened.  But we also established that

6    on two occasions, he was actually an eager participant in

7    direct transportation of, again, huge quantities of drugs.  His

8    eagerness reflects that there was really no end in sight, short

9    of arrest, for his drug trafficking activities and his goals,

10   and for that reason, Judge, specific deterrence is a critical

11   feature of the sentencing.

12             But as I said in the beginning, so is general

13   deterrence.  This is a case that illustrates why arresting drug

14   traffickers like the Cachiros simply won't suffice to stem the

15   tide of cocaine into this country.  Drug traffickers will be

16   replaced and the Cachiros probably already have them.  What

17   must be attacked and targeted in cases like this is the type of

18   political and structural support provided to drug traffickers

19   in South and Central America, support that allows them to

20   flourish at the levels that the Cachiros did.  That is the type

21   of problem that this case has highlighted.  And political

22   elites in these regions, they must understand that if they

23   support drug trafficking activities like this, if they allow

24   these things to happen in their countries, they will face

25   severe consequences when they get here.  And no matter what

Case 1:15-cr-00174-LGS Document 497-21 Filed 02/08/21 Page 10 of 27
Case 1:15-cr-00174-LGS Document 252 Filed 09/19/17 Page 10 of 27          10
H958LOBS

1    happens today, today's sentence will send an important message

2    in that regard.

3           So for all of these reasons, Judge -- the enormous

4    quantity of drugs that we are talking about, the other

5    aggravating considerations that we have discussed, and the need

6    for general deterrence of this specific type of conduct,

7    political elites in South and Central America facilitating the

8    transportation and distribution of massive quantities of

9    cocaine -- a guideline sentence is appropriate.

10          THE COURT:  Thank you.

11          Mr. Retureta, would you like to be heard?

12          MR. RETURETA:  Yes, your Honor.  Thank you.

13          Listening to the prosecutor describe the level of

14   activity to which he would like to place on Mr. Lobo astounds

15   me.  The prosecutor has other cases before him, including

16   defendants before your Honor that are police officers.  Those

17   police officers, as we look at Section 3553(a)(6) and the Court

18   tries to determine whether there are disparate sentences that

19   may be issued on similarly situated defendants, those police

20   officers, as I have received my ECF notices, have made

21   agreements with the government for plea agreements that place

22   those defendants at five to 40 years.  Yet the superseding

23   indictment that brought those defendants to this court, that

24   carried the name of Mr. Lobo, described activity on the part of

25   those officers, members of the government, using their position

Case 1:15-cr-00174-LGS Document 497-1 Filed 02/08/21 Page 11 of 27
Case 1:15-cr-00174-LGS Document 252 Filed 09/19/17 Page 11 of 27          11
H958LOBS

1    for the benefit of drug trafficking organizations, and not just

2    the Cachiros organization, that activity was described as

3    stretching back to 2004.

4            The frustration that I feel with this case is that I

5    believe simply that the prosecution is not happy with the fact

6    that Mr. Lobo cannot tell them what they wanted him to tell.

7            Mr. Lobo pled guilty in this case. Mr. Lobo, having

8    been presented with the Pimentel letter, which described in

9    detail everything that could fall on him, the potential time

10   that he could face, he ordered his attorney to go ahead and

11   plead guilty, when there was no offer for a plea, when there

12   was no ability for me to say, Mr. Lobo, guess what, we worked

13   out a deal where it's only five to 40.

14           It is astounding because while those numbers are

15   thrown, and will be discussed not only here but outside this

16   court, and necessarily in the country of Honduras, it is

17   astounding because this Court was able to bring to the

18   attention of both the government and the defense a case by the

19   name of *Honeycutt*. And the case of *Honeycutt* was interesting

20   because the Supreme Court ruled, as we all know, that

21   forfeiture would not be stretched to co-conspirator liability,

22   the *Pinkerton* concept of liability. So forfeiture would not

23   mean that if Mr. Lobo was associated with the Cachiros drug

24   trafficking organization, he would be responsible for

25   everything, for the purposes of forfeiture, recognizing that.

Case 1:15-cr-00174-LGS Document 497-1 Filed 02/08/21 Page 12 of 27
Case 1:15-cr-00174-LGS Document 252 Filed 09/19/17 Page 12 of 27    12
H958LOBS

 1    But for the purposes of forfeiture, that case, what happened in

 2    that litigation is a perfect example of what is happening in

 3    this case.  The prosecution in this case wants Mr. Lobo to be

 4    the 13 million dollar man.  And your Honor will recall that the

 5    prosecution sought $13.11 million worth of forfeiture from this

 6    individual.  *Honeycutt* came out.  We both reviewed it.  We both

 7    concluded that that number was wrong.  The prosecution came up

 8    with a number.  We came up with a lower number.  $266,667.

 9           I raise that not because $13 million turned into $10

10    million, or maybe $7 million.  I raise it because, even though

11    we are talking about forfeiture, it is the perfect example of

12    what this man is and how this man was used by the government's

13    witness, Mr. Rivera Maradiaga, and his drug trafficking

14    organization.  Because if we are to go down the path that the

15    government wishes us to go down, in terms of his drug

16    trafficking acumen, his ability to parlay these deals, to

17    gather people from different parts of the government and put

18    them together and make a load go north, then we necessarily

19    have to figure out, where did his money go, where was his

20    mansion, where was his luxury car?  *Honeycutt* does one simple

21    thing.  It reveals the falsehood of what the government is

22    trying to establish with this case.  He did not get money.  He

23    was used, tossed aside.  He was a fool's errand for one of the

24    largest drug trafficking organizations in Honduras.  And he did

25    not participate at the level that the government wishes that he

H958LOBS

1    did.

2            He pled guilty knowing that that is what was coming at

3    him.  We told him, we advised him, they are going to ask for

4    these enhancements.  They are going to say you had a gun

5    because your bodyguards had a gun.  But it wasn't the gun, it

6    was his face.  They are going to tell you that somehow you are

7    a leader because you had people around you.  But it wasn't his

8    people, it was a security detail that everyone in the Lobo

9    family had to have because the father was the president at that

10   time.

11           We rely upon testimony from a government witness

12   where, we submit, we have already established committed perjury

13   on that stand.  And we submit that in the future the problems

14   will continue to come.  We respect the Court's decision

15   regarding the request we made in July for Brady, but we stand

16   by our request for that information.  There is undoubtedly

17   information in the possession of the government which deals

18   with the credibility of the primary witness -- not the primary,

19   the only witness that the government has used to enhance this

20   man's sentence.

21           Obviously, we feel the guidelines are overrepresented,

22   are out of line for an appropriate sentence in this case.  Mr.

23   Lobo, given what he did, given the limits of what was

24   happening -- because let's remember, the limits of what

25   happened was activity and then efforts by the Cachiros,

Case 1:15-cr-00174-LGS Document 497-1 Filed 02/08/21 Page 14 of 27
Case 1:15-cr-00174-LGS Document 253 Filed 09/19/17 Page 14 of 27          14
H958LOBS

1    together with US law enforcement, to bring him into other

2    activity -- warrants something well below 30 years.  Large

3    scale drug trafficking kingpins that have controlled regions in

4    Colombia, Guatemala, Honduras and Mexico have received 25, 30

5    and 40 years, for going to trial, making the government expose

6    their evidence completely, and having been found guilty.

7              It's not a just sentence for this man.  This man took

8    an action that was extraordinary.  He could have told this

9    attorney take him to trial, make them put everything out there,

10   I don't care.  His direction was, I am accepting responsibility

11   for what I did.  We don't agree on what happened, but he

12   accepted responsibility knowing the consequences.

13             Your Honor, I raise that and emphasize that because I

14   think it is key to the Court's decision.  He will return to

15   Honduras.  His wife is in the second row, second from the left.

16   The three-year-old, maybe in her teens or in her 20s; the

17   18-year-old in her 20s or 30s; the 13-year-old, 20s or 30s.

18   Life will go on.  That woman will bear the burden of everything

19   that happens from this day forward, and he knows it.

20             I can tell the Court, because I have been with him

21   from day one, that there has not been a moment when this

22   individual has not referenced his family, when he has not met

23   and cried when you speak of his daughters, when he realizes the

24   pain and the damage that he has put that family through.  He is

25   not a drug kingpin; he was a sap for a drug kingpin.  They used

Case 1:15-cr-00174-LGS   Document 497-1   Filed 02/08/21   Page 15 of 27
Case 1:15-cr-00174-LGS   Document 232   Filed 09/19/17   Page 15 of 27        15
H958LOBS

1   him like they are using so many others in Honduras in an effort

2   to help themselves.  They opened the door.  Did he walk through

3   it?  Did he go in and do it?  You bet he did, and he knows it.

4   He is not walking back from that responsibility, but 30 years

5   is outrageous when there are comparative sentences that are

6   different.

7           We have provided the Court with some examples.  Some

8   of the examples we have provided in an effort to establish some

9   disparity or at least references so there would not be

10  disparity:  Colombian FARC guerilla, in the industry of terror

11  and drugs, 16 years, serving member of the armed revolutionary

12  forces of Colombia.  Drug kingpins from Guatemala, in the realm

13  of 20 to 25 years.  Your Honor, he is stuck at 10; he is stuck

14  at 10 because we couldn't agree.

15          We ask the Court to go well below those guidelines.

16  We ask the Court to pay attention to the fact that he took this

17  giant step knowing what was coming at him, but it was his

18  decision, he felt it was the right thing to do, and that, as an

19  officer of the court, I am astounded that it's not recognized

20  by the prosecution.  We saved them their time.  We saved the

21  DEA represented here, their cooperator.  We saved the ability,

22  the resources, the money of this court.  This man accepted

23  responsibility.

24          Your Honor, we would ask that no fine be imposed on

25  Mr. Lobo.  We provided the financial details of Mrs. Lobo

H958LOBS

1    because that is what is providing for those daughters and

2    that's what Mrs. Lobo has to deal with on a daily basis.

3    Beyond that, $266,000 worth of forfeiture is more than enough

4    for this individual because it is, as we established, what he

5    earned, what he got out of this conspiracy.

6          We ask the Court for a recommendation for a BOP

7    designation.  Because he does not have direct family in the

8    United States, it would require Mrs. Lobo to travel to the

9    United States, and therefore we would ask the Court to make the

10   recommendation to the Bureau of Prisons for a facility in the

11   southwestern region of the country -- I mean southeastern, I'm

12   sorry, primarily the state of Florida.  Coleman has been a

13   facility that has been proven easily accessible because of the

14   nearby Orlando airport.  So we would ask the Court to consider

15   that.

16         I think that's all I have, your Honor.  I just ask the

17   Court to consider that.  And I know that Mr. Lobo has prepared

18   some words for the Court.

19         THE COURT:  Thank you.

20         Mr. Lobo, you don't have to speak, but if you would

21   like to speak, now is your opportunity.

22         MR. RETURETA:  Would you like him to stand, your

23   Honor?

24         THE COURT:  Up to him.

25         THE DEFENDANT:  Good afternoon, your Honor,

Case 1:15-cr-00174-LGS Document 497-1 Filed 02/08/21 Page 17 of 27
Case 1:15-cr-00174-LGS Document 252 Filed 09/19/17 Page 17 of 27        17
H958LOBS

prosecutors, and everyone who is present here.  I thank you,
your Honor, for allowing me to say these words.

I want to apologize today to the government of the
United States for my mistake, to apologize to the people of
Honduras, to my mother, and especially to my father who has
nothing to do with this.  I apologize to my three daughters,
and also to my beloved wife, who have been emotionally affected
for my mistake.  What they have lived from day to day has not
been easy at all, with society pointing them out.  I should
have been an example for my daughters, my siblings, brothers
and sisters.

I repent, your Honor, for my mistake that I committed,
and I have pled guilty, accepted responsibility for having
approached and trusted people who are bad, dangerous, and with
an evil heart.  The only thing that they were looking for was
to cause me harm and my family in order to obtain a benefit for
themselves.  I was vulnerable in spite of my father's advice.
They affected me greatly.  And I dragged along my parents, my
wife, daughters, and all of my family, without any need to do
this, since I have had everything in my life.  God has blessed
me, has given me many opportunities, as, for example, to be a
professional man.  I did not value what God has given me and
neither did I measure the consequences, the harm that all of
this has caused me and my family.

From the bottom of my heart, I want to ask that God

Case 1:15-cr-00174-LGS   Document 497-1   Filed 02/08/21   Page 18 of 27      18
Case 1:15-cr-00174-LGS   Document 252-1   Filed 09/19/17   Page 18 of 27
H958LOBS

1    may touch your heart, that you have pity on me for my mistake.

2    I have learned a great lesson in my life.  I made a mistake, as

3    a human being that I am, and I am paying a very high price for

4    my freedom.  Freedom has no price.

5         I ask your Honor for pity on my sentence, your Honor,

6    and I apologize for my mistake.  I beg you for a minimum

7    penalty in order to soon return home to my three daughters, who

8    are 5, 13 and 19 years of age.  They need their father.  Judge

9    me, Fabio Lobo, for the mistake I made.  In these three years

10   that I have been deprived of freedom, away from my family, I

11   have suffered.  I have reflected and I am repented of

12   everything that has happened.

13        Thank you, your Honor.  I thank you and may God touch

14   your heart.

15        THE COURT:  Thank you.

16        Is there any reason why sentence should not be

17   imposed?

18        MR. RETURETA:  No, your Honor.

19        MR. BOVE:  No, your Honor.

20        THE COURT:  As I have stated, the recommendation under

21   the guidelines in this case is 360 months, or 30 years, to life

22   imprisonment.  Under the Supreme Court's decision in *United*

23   *States v. Booker*, that recommendation is just one factor that

24   the Court considers.  The Court must also consider the factors

25   that are set forth in a statute called 18 U.S.C., Section

Case 1:15-cr-00174-LGS Document 497-1 Filed 02/08/21 Page 19 of 27
Case 1:15-cr-00174-LGS Document 252 Filed 09/19/17 Page 19 of 27          19
H958LOBS

1    3553(a).

2            Mr. Lobo, these factors include the nature and

3    circumstances of the offense, your own personal history and

4    characteristics, the need for the sentence to reflect the

5    seriousness of the offense, promote respect for the law,

6    provide just punishment for the offense.  Also, to afford

7    adequate deterrence to criminal conduct, and that means not

8    just deterring you, I don't really have any doubt that if given

9    the opportunity now you would lead a law-abiding life, but also

10   to deter others who might be like you and who would see what

11   the consequences are of actions like the ones you have taken.

12           Also, an important factor is to avoid unwarranted

13   sentence disparities among defendants who are similarly

14   situated.  And to impose a sentence that is sufficient but no

15   greater than necessary to achieve these purposes.  And I find

16   that the sentence I am about to pronounce is sufficient, but

17   not greater than necessary to satisfy these sentencing

18   purposes.

19           So I have thought very carefully about the sentence in

20   your case, and it's difficult only because the amount of time

21   that is recommended by the guidelines is so great.  I see that

22   you are a relatively young man.  You had your life before you.

23   But I have to start with the offense.  You participated in a

24   conspiracy to import cocaine into the United States, and this

25   was not just something that I read about in an indictment or in

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Case 1:15-cr-00174-LGS Document 497-1 Filed 02/08/21 Page 20 of 27
Case 1:15-cr-00174-LGS Document 252 Filed 09/19/17 Page 20 of 27                    20
H958LOBS

1   a paragraph summary in the presentence report.  This is

2   something that I actually saw a great deal of evidence about,

3   not only in the form of testimony, but also in the form of tape

4   recordings and other evidence.  So I feel as though in this

5   case, unlike many others where I have to sentence someone, I

6   actually had a much better feel for what happened and what your

7   actual participation was.

8            The most damning fact in your background and in your

9   participation in this is that you are not like the police

10  officers who have made plea agreements with the government for

11  a much less amount of time in prison.  You were the son of the

12  sitting president of Honduras, and you used your connections,

13  your reputation in your political network to try to further

14  corrupt connections between drug traffickers and Honduran

15  government officials.  And these included not only lowly

16  officials, like customs people and military and law enforcement

17  personnel, but also extremely high level officials.  In short,

18  what distinguishes your case from so many is that you

19  facilitated strong government support for a large drug

20  trafficking organization for multiple elements of the Honduran

21  government, and you enriched yourself in the process.

22           Your lawyer makes a lot of the fact that you did not

23  become a millionaire or more in this participation, but that is

24  beside the point.  The point is really that you abused who you

25  are and the benefits and advantages that you had to further

Case 1:15-cr-00174-LGS Document 497-1 Filed 02/08/21 Page 21 of 27
Case 1:15-cr-00174-LGS Document 252-1 Filed 09/19/17 Page 21 of 27    21
H958LOBS

1    this crime.  Your guidelines calculation is based on the

2    distribution of over 450 kilograms of cocaine to the United

3    States, and by my calculation that's only about a half a ton.

4    I say only in comparison to the amount that the government

5    proffered at the Fatico hearing and in its papers that you were

6    responsible for.  But whether it was four tons, whether it was

7    half a ton, the fact that is most weighty in my mind was the

8    abuse of your position and the privilege that you enjoyed.

9            I turn now to more sympathetic factors.  You're 46

10   years old.  You're married.  I know you have three daughters,

11   who are, I think, 17, 12 and 4.  And your lawyer is right.  The

12   brunt of this will fall not only on you, but on them.  But what

13   is sad, in the inevitable consequence of the justice system, is

14   that that is always the case.  And that is a responsibility

15   that defendants assume when they commit these crimes.

16           As the son of the former president of Honduras, you

17   attended the best schools, you were well provided for, as you

18   said, you were blessed, and perhaps didn't appreciate those

19   blessings.  As an adult, you were very accomplished.  You

20   earned a law degree; you worked as an attorney, a juvenile

21   court judge, a notary, which is an important position that

22   requires approval by, I think, the Honduran supreme court.  And

23   this is your first known criminal conviction.  You came here as

24   a result of that arrest.

25           As I assess all of these factors, both your personal

Case 1:15-cr-00174-LGS Document 497-1 Filed 02/08/21 Page 22 of 27
Case 1:15-cr-00174-LGS Document 252-1 Filed 09/19/17 Page 22 of 27                    22
H958LOBS

1    factors as well as the crime you were engaged in, it is not

2    only important but inevitable that I impose a substantial

3    sentence to promote respect for the law and also to deter

4    others who may enjoy the kinds of benefits that you have and

5    who occupy similarly important positions in their governments.

6            I have reports about your assets, that you own two

7    vehicles and a farm that estimate to be worth about $120,000.

8    I also have documents about indebtedness that you have.  Your

9    wife works as a school teacher.  Since your incarceration your

10   father has helped to support your family.  I don't think that

11   you're a person who got rich engaging in these activities.  So

12   that is really not a part of my sentence.

13           One of the objectives as the sentencing guidelines is

14   to treat similarly situated defendants the same, and in my mind

15   that is not the police officers who your lawyer pointed out,

16   but I have tried to figure out who might be similarly situated.

17   So to that end, I made inquiries with the United States

18   Sentencing Commission about defendants with a similar

19   sentencing guideline profile to the one that you have from

20   around the country.  And what I learned was that people have

21   been sentenced both within the guidelines and below the

22   guidelines, and just taking those cases, and they admittedly

23   aren't a huge number of them, the average that I saw was 24.5

24   years.  And that's actually not so far from what the probation

25   department recommended, which was a below guideline sentence of

Case 1:15-cr-00174-LGS Document 497-1 Filed 02/08/21 Page 23 of 27
Case 1:15-cr-00174-LGS Document 252 Filed 09/19/17 Page 23 of 27          23
H958LOBS

1    25 years.

2          The government, as you know, is recommending a

3    guideline sentence so that is a minimum of 30 years.  The

4    probation department, as I mentioned, recommends a below

5    guideline sentence of 25 years.  And I am mindful, as I think

6    about all of this, of imposing a sentence that is no greater

7    than necessary to comply with the sentencing purposes.  And

8    what I am thinking of primarily now is general deterrence, what

9    is the message that needs to be sent to people who may be

10   similarly situated to you, and also the gravity of the offense,

11   what you were involved in and what a just punishment is for

12   that.

13         So weighing all of these factors, I will now state the

14   sentence that I intend to impose, but the attorneys will have a

15   final opportunity to make legal objections before it's final.

16         So, Mr. Lobo, will you please stand.

17         After assessing the particular facts of this case, the

18   factors under Section 3553(a), including the sentencing

19   guidelines, I conclude that a sentence below the guidelines is

20   justified as follows.

21         Mr. Lobo, it is the judgment of the Court that you are

22   remanded to the custody of the Bureau of Prisons for a period

23   of 24 years.  I will impose a fine of $50,000 and supervised

24   release of five years.

25         The standard conditions of supervised release will

H958LOBS

1    apply.

2              In addition, you will be subject to the following

3    mandatory conditions:

4              First, you must not commit another federal, state or

5    local crime.

6              You must not illegally possess a controlled substance.

7              You must not possess a firearm or destructive device.

8              If you are in this country, you will be subject to

9    mandatory drug testing and you will cooperate in the collection

10   of your DNA.

11             You must also meet the following special conditions:

12             I am only going to impose one because I assume, since

13   you were brought here voluntarily, you will be deported as soon

14   as you're released from prison.  So the special condition is

15   that you shall obey the immigration law of the United States

16   and comply with the directives of the immigration authorities.

17             I am required to impose a special assessment of $100,

18   which will be due immediately.

19             Does either counsel know of any legal reason why this

20   sentence should not be imposed as stated?

21             MR. BOVE:  No, your Honor.

22             MR. RETURETA:  No, your Honor.

23             THE COURT:  The sentence as stated is imposed.

24             I heard Mr. Retureta's application for a

25   recommendation that Mr. Lobo be housed at a facility as near

H958LOBS

1    Orlando as possible to facilitate your family's travels.

2              My deputy reminds me that you asked specifically for

3    FCI Coleman.  I wasn't familiar with it.  He tells me now what

4    it is, so I will make that specific recommendation and will see

5    whether they follow it.

6              Are there any open counts that need to be dismissed?

7              MR. BOVE:  No, your Honor.

8              THE COURT:  You may have the right to appeal your

9    conviction and your sentence.  If you are unable to pay the

10   cost of an appeal, you my apply for leave to appeal in forma

11   pauperis.  The notice of appeal must be filed within 14 days of

12   the judgment of conviction.

13             I wanted to say just a brief word to your family.

14   Will they understand me or shall I have the translator

15   translate?

16             MR. RETURETA:  Mrs. Lobo understands English.  I can

17   inquire whether she would feel more comfortable with the

18   headsets.

19             THE COURT:  I can just have the translator translate

20   in open court.

21             Mrs. Lobo, I wanted to address you and other family

22   and friends who may be here to support you and Mr. Lobo.

23             Will you just speak out loud?

24             THE INTERPRETER:  May the interpreter inquire?

25             THE COURT:  Just speak out loud.

H958LOBS

```
 1              THE INTERPRETER:  Go ahead, your Honor.
 2              THE COURT:  What I said was, Mrs. Lobo, I wanted to
 3    address you and other family and friends who are here to
 4    support you and Mr. Lobo.
 5              I am very sorry this misfortune has befallen you, and
 6    I am also sorry to be a part of it.  But I hope you will
 7    understand that the drug problem in this country has been a
 8    terrible scourge for so many people and it is the obligation of
 9    many of us in this courtroom to uphold and enforce the drug
10    laws and to try to create a deterrent effect to discourage
11    people who would be involved in drug trafficking, and that's
12    really what this is all about.
13              I know that's not very much consolation to you, but
14    what I would like to say is that your husband, Mr. Lobo, will
15    need your love and support and that of your family and friends
16    in the coming years, and I hope that you will be able to give
17    that to him, because he made a terrible mistake, he now has to
18    pay for the terrible mistake, but I don't think he is a bad
19    man.  So I wish you the best of luck.  I am sorry you're here
20    under these circumstances.
21              Is there anything else we need to talk about?
22              Could I ask the government about the offense end date.
23    Is it May 21, 2015?
24              MR. BOVE:  Yes, your Honor, I believe that's the
25    arrest date.
```

H958LOBS

1            THE COURT:  Anything else?

2            MR. RETURETA:  No, your Honor.

3            THE COURT:  We are adjourned.

4            (Adjourned)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25