UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
FABIO PORFIRIO LOBO,                                          :
                              Petitioner,                     :
                                                              :   19 Civ. 9982 (LGS)
                -against-                                     :   15 Crim. 174 (LGS)
                                                              :
UNITED STATES OF AMERICA,                                     :   **OPINION AND ORDER**
                              Respondent.                     :
------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

Pro se petitioner Fabio Porfirio Lobo brings this § 2255 petition to vacate, set aside, or correct his sentence for violating 21 U.S.C. § 963 following a guilty plea (the "Petition"). *See* 28 U.S.C. § 2255. The Petition asserts five grounds for relief, including four claims that Petitioner received ineffective assistance of counsel and a claim that Petitioner's sentence violates due process because he was not charged with, and did not plead guilty to, having the required *mens rea* as to the type and amount of drugs involved in the offense of which he was convicted. For the reasons below, the Petition is denied.

I.      BACKGROUND

Petitioner is the son of a former President of Honduras. Prior to his arrest, Petitioner used his position to offer security and assistance to the "Cachiros," a violent drug trafficking organization, in its distribution of large quantities of cocaine from South America to the United States through Honduras on behalf of Mexican drug traffickers.

On April 4, 2016, the Government sent Petitioner's attorney, Manuel Retureta, a *Pimentel* letter, reflecting a preliminary Guidelines calculation. On May 16, 2016, Petitioner pleaded guilty, without a plea agreement, to one count of conspiring to import into the United States five kilograms or more of cocaine from at least sometime in 2009 through July 2014 in violation of

21 U.S.C. § 963. Petitioner was represented by his attorney. During the plea colloquy, Petitioner confirmed that he understood that the *Pimentel* letter "is not a promise or guarantee by the government," that the Court would make its own determination about Petitioner's sentence and that he would not be able to withdraw his plea even if the sentence was different from what his attorney or anyone else had predicted. Petitioner stated that he was satisfied with his attorney's representation of him and that he understood that any prediction regarding his sentence made by his attorney "could be wrong." Petitioner also is an attorney himself and has served as a judge, though he notes that he has no training in U.S. criminal law.

The Court held a *Fatico* hearing in March 2017. The sole witness at the hearing was Devis Leonel Rivera Maradiaga ("Mr. Rivera"). Mr. Rivera was the leader of the Cachiros and testified that Petitioner had provided security and logistical support to the Cachiros in connection with multi-hundred-kilogram shipments of cocaine. Mr. Rivera also testified that he, with Petitioner's assistance, paid bribes to Petitioner and other government officials for favorable government contracts and information that helped the Cachiros avoid seizure of their assets by the Honduran government.

On July 31, 2017, the Court held a hearing on Petitioner's motion to compel production of alleged *Brady* material related to an Office of the Inspector General Report from the Department of Justice and Department of State ("OIG Report"), which described misconduct by DEA agents in Honduras while investigating the Cachiros. Petitioner's counsel sought the names of the DEA agents involved in the investigation, arguing that information about their misconduct would be favorable to Petitioner. The Government confirmed that the misconduct detailed in the OIG Report was not relevant to any investigation involving Petitioner's case. The Court denied the motion to produce the OIG Report.

Petitioner was sentenced on September 5, 2017. In calculating the recommended sentence under the 2016 edition of the Federal Sentencing Guidelines ("Guidelines"), the Court determined a base offense level of 38. This offense level was enhanced by three points due to Petitioner's role as a "manager or supervisor" under Guideline 3B1.1(b), by two points due to his "direct involvement in importation" under Guideline 2D1.1(b)(15)(C) and by another two points for firearm possession under Guideline 2D1.1(b)(1). The Court then subtracted three points due to Petitioner's acceptance of responsibility under Guideline 3E1.1(a), resulting in a total offense level of 42. The Court further found that Petitioner's criminal history category was I. The resulting Guidelines recommendation was a sentence of thirty years to life imprisonment.

The Probation Department recommended a sentence of 25 years. At the sentencing hearing, the Court referenced data from the United States Sentencing Commission ("Sentencing Commission") regarding the sentences of similarly situated defendants, which indicated that such defendants had been sentenced both within and below the Guidelines, and that the average sentence was 24.5 years. Defense counsel did not object to the Court's consideration of this data. The Court sentenced Petitioner to a term of 24 years.

On appeal, Petitioner challenged his sentence as procedurally and substantively unreasonable. *See United States v. Romero*, 749 F. App'x 31, 33 (2d Cir. 2018) (summary order). Specifically, Petitioner challenged his Guidelines sentencing enhancements and argued that his due process rights were violated because the Court had relied on data from the Sentencing Commission without offering an opportunity to respond. *See id.* The Second Circuit found that Petitioner "offer[ed] no authority for the proposition that a district court is required to give advanced notice to a defendant if it decides to rely on publicly available sentencing data" and held that Petitioner's sentence was reasonable. *See id.* at 34-35. The Supreme Court denied

Petitioner's writ of certiorari on January 14, 2019. *See Lobo v. United States*, 139 S. Ct. 933 (2019) (mem.).

## II. LEGAL STANDARD

A federal prisoner may move to vacate, set aside or correct his sentence on four grounds pursuant to § 2255:

> (1) that the sentence was imposed in violation of the Constitution or laws of the United States, or (2) that the court was without jurisdiction to impose such sentence, or (3) that the sentence was in excess of the maximum authorized by law, or (4) is otherwise subject to collateral attack.

*United States v. Hoskins*, 905 F.3d 97, 102 (2d Cir. 2018) (cleaned up) (quoting U.S.C. § 2255(a)). "In ruling on a motion under § 2255, the district court is required to hold a hearing 'unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) (quoting 28 U.S.C. § 2255(b)); *accord Gobern v. United States*, No. 18 Civ. 12411, 2020 WL 6487965, at *2 (S.D.N.Y. Nov. 4, 2020). "To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the petitioner] to relief." *Gonzalez*, 722 F.3d at 131.

Courts must liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions "to raise the strongest claims [they] suggest[]." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (internal quotations marks omitted). "Nevertheless, a *pro se* litigant is not exempt 'from compliance with relevant rules of procedural and substantive law.'" *Murphy v. Warden of Attica Corr. Facility*, No. 20 Civ. 3076, 2020 WL 2521461, at *1 (S.D.N.Y. May 15, 2020) (quoting *Tragath v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

4

### III. DISCUSSION

The Petition cites five grounds upon which relief should be granted under § 2255. Four grounds assert that Petitioner received ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 669 (1984). The last ground asserts that Petitioner's sentence was imposed in violation of the Constitution because he was not charged with, and did not plead guilty to, each element of the crime of which he was convicted. Petitioner argues that, after the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), the controlled substances offenses under 21 U.S.C. sections 952(a), 959(a), 960 and 963 include as an element "knowledge" of the amount and type of drugs involved. Petitioner also contends that those statutes are unconstitutional in light of *Rehaif*, either facially or as applied to Petitioner.

### A. Ineffective Assistance of Counsel

The Sixth Amendment provides "the right to the effective assistance of counsel." *Strickland*, 466 U.S. at 669. "There is 'a strong presumption that counsel's conduct fell within the wide range of professional assistance.'" *Weingarten v. United States*, 865 F.3d 48, 52 (2d Cir. 2017) (quoting *Lynch v. Dolce*, 789 F.3d 303, 311 (2d Cir. 2015), in turn quoting *Strickland*, 466 U.S. at 689). "To overcome that presumption, a petitioner must establish two elements. First, the petitioner must show that counsel's performance was deficient by demonstrating that the representation 'fell below an objective standard of reasonableness.'" *Id.* (quoting *Strickland*, 466 U.S. at 688). "Second, the petitioner must show that counsel's deficient representation was prejudicial to the defense by establishing 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). "[A]n ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised

the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003). Petitioner argues that his counsel was ineffective in four ways.

### 1. Failure to Object to the Court's Use at Sentencing of Data from the Sentencing Commission

Petitioner argues that Mr. Retureta rendered ineffective assistance by failing to object at sentencing to the Court's reliance on data from the Sentencing Commission regarding similarly situated defendants without prior notice to Petitioner. Petitioner's claim fails on both *Strickland* prongs.

Defense counsel's failure to object was not objectively unreasonable because the objection lacks merit. *See, e.g.*, *Hotton v. United States*, No. 18 Civ. 7717, 2019 WL 1932537, at *4 (S.D.N.Y. May 1, 2019) ("In order to succeed on a claim that counsel was ineffective by failing to object, a petitioner must posit a meritorious objection."). Federal Rule of Criminal Procedure 32(h) requires reasonable notice only when a district court is contemplating a "departure" from the Sentencing Guidelines, and it does not apply to "variances" based upon consideration of the factors set out in 18 U.S.C. § 3553(a). *See Irizarry v. United States*, 553 U.S. 708, 714-16 (2008); *accord United States v. Sealed Defendant One*, 49 F.4th 690, 697 (2d Cir. 2022). "[A] departure refers only to non-Guidelines sentences imposed on the basis of factors *within* the framework set out in the guidelines, whereas a variance is a modification of the applicable Guidelines sentence that a District Court may find justified under sentencing factors *extrinsic* to the Guidelines -- namely, those set forth in 18 U.S.C. § 3553(a)." *Sealed Defendant One*, 49 F.4th at 697 (cleaned up). The notice requirement did not apply because the Court did not employ a "departure" but rather a "variance." Specifically, the Court relied upon publicly available sentencing data in order to "avoid unwarranted sentence disparities among defendants"

6

who are similarly situated to impose a below-Guidelines sentence in favor of Petitioner. 18 U.S.C. § 3553(a)(6).

Petitioner relies on cases that are either distinguishable or no longer good law after *Irizarry*. *Burns v. United States*, 501 U.S. 129 (1991), on which Petitioner relies, was decided before *United States v. Booker*, 543 U.S. 220 (2005), at a time when the Guidelines were mandatory outside of narrowly-defined "departures," and where variances were not possible. *Irizarry,* which followed *Booker*, limited the holding of *Burns* to departures and specifically rejected any extension to variances. *Irizarry*, 553 U.S. at 716 ("[T]he justification for our decision in *Burns* no longer exists, and such an extension [of the *Burns* rule to variances] is apt to complicate rather than to simplify sentencing procedures."). *Irizarry* abrogated *United States v. Anati*, 457 F.3d 233 (2d Cir. 2006), on which Plaintiff relies, which had extended *Burns* to post-*Booker* variances. *Anati*, 457 F.3d at 236-37 (referring to variances as "non-Guidelines sentences"). To the extent the court in *United States v. Gilmore*, 470 F. Supp. 2d 233 (E.D.N.Y. 2007), applied the rationale of *Anati* in extending the notice requirement to variances, *Gilmore* also is no longer good law. The most that Petitioner's counsel might have asked for upon learning that the Court would consider the Sentencing Commission data was that the Court "consider granting a continuance" on the basis "that the surprise was prejudicial." *Irizarry*, 553 U.S. at 716. Petitioner has not made any showing that he or his counsel were surprised by the Court's efforts to comply with the instruction of § 3553(a)(6) to avoid sentencing disparities, much less that it was prejudicial.

Defense counsel's decision not to object was not objectively unreasonable because it was strategically sound. *See Strickland*, 466 U.S. at 687; *see also Scott v. United States*, No. 16 Civ. 4262, 2019 WL 6034973, at *3 (S.D.N.Y. Nov. 14, 2019) ("Petitioner will not meet the

[deficient performance] prong based solely on disagreements with counsel's strategy or advice."). Petitioner faced a Guidelines recommendation of thirty years to life imprisonment. The Probation Department recommended a below-Guidelines sentence of twenty-five years. The Sentencing Commission's average of 24.5 years based on comparable defendants also supported a below-Guidelines sentence. This information was favorable to Petitioner in supporting the Court's imposition of a below-Guidelines sentence of twenty-four years.

For similar reasons, Petitioner has not established "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Weingarten*, 865 F.3d at 52 (quoting *Strickland*, 466 U.S. at 688). Even if Petitioner's counsel had succeeded in obtaining a continuance or even rebutted the Court's use of the Sentencing Commission data, Petitioner has not established any reason why the Court would have sentenced him *even further* below the Guidelines range. It is likely that Petitioner would have received a longer term of imprisonment without the significant mitigating data to which he now objects. The Petition's first ground for arguing ineffective assistance of counsel therefore is rejected on both prongs of the *Strickland* analysis.

    **2. Failure to Object Pursuant to Guidelines Amendment 790 and to Develop the Record for Appellate Review**

Petitioner argues that defense counsel rendered ineffective assistance by failing to object to the District Court's fact-finding at sentencing pursuant to Guidelines Amendment 790. The argument is unavailing because such an objection would have been without merit. *See United States v. Regalado*, 518 F.3d 143, 149 n.3 (2d. Cir. 2008) ("[F]ailure to make a meritless argument does not amount to ineffective assistance." (internal quotation marks omitted)); *accord Williams v. United States*, No. 17 Civ. 4317, 2020 WL 1847966, at *8 (S.D.N.Y. Apr. 13, 2020).

The Petition argues that the Court "did not make any . . . individualized findings on the record concerning the scope of [Petitioner's] criminal activity" as it was supposed to under § 1B1.3(a)(1)(B) after Amendment 790 and that Petitioner's counsel failed to object.[1] The Sentencing Commission promulgated Amendment 790 on November 1, 2015, which made clarifying revisions to Guideline § 1B1.3(a)(1)(B) for offenses involving multiple participants. The Petition's argument fails because the Court did not apply § 1B1.3(a)(1)(B) but instead applied § 1B1.3(a)(1)(A). In other words, in assessing the relevant conduct for purposes of determining the Petitioner's Guidelines range, the Court considered Petitioner's own personal conduct and did not impute to him the acts or omissions of others. Consequently, counsel's lack of objection based on Amendment 790 was neither deficient nor prejudicial.

### 3. Inaccurate Plea Advice

The Petition asserts that Petitioner's counsel was ineffective for providing purportedly inaccurate advice regarding Petitioner's sentencing exposure in connection with Petitioner's guilty plea. Petitioner filed two affidavits, one by Petitioner's wife and another by Petitioner, in support of this claim. Both affidavits state that defense counsel informed Petitioner that Petitioner's sentencing exposure was between six to ten years. For purposes of this analysis, the Court assumes this statement to be true.

In the context of a habeas challenge to a guilty plea "a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012). When the Petitioner's "specific claim is that counsel has misled him as to the possible sentence which might result from a plea of guilty," the prejudice issue is determined by "whether the defendant was aware of actual sentencing possibilities, and if not, whether

---

[1] The Petition cites § 3B1.3(a)(1)(B) which is not a provision in the Guidelines. Construing the Petition liberally, the Court assumes the reference is to Guideline § 1B1.3(a)(1)(B).

accurate information would have made any difference in his decision to enter a plea." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005) (internal quotations omitted). Factors to be considered by the district court include:

> (a) whether the defendant pleaded guilty in spite of knowing that the advice on which he claims to have relied might be incorrect, (b) whether pleading guilty gained him a benefit in the form of more lenient sentencing, (c) whether the defendant advanced any basis for doubting the strength of the government's case against him, and (d) whether the government would have been free to prosecute the defendant on counts in addition to those on which he pleaded guilty. !

*Chhabra v. United States*, 720 F.3d 395, 408 (2d Cir. 2013); *accord United States v. Morton*, No. 16 Crim. 371-5, 2020 WL 6151265, at *18 (S.D.N.Y. Oct. 20, 2020).

The record shows beyond dispute that Petitioner was aware of the actual maximum sentence that he faced. First, during Petitioner's plea hearing, he confirmed under oath that he understood that the crime charged carried "a maximum term of life imprisonment [and] a mandatory minimum term of ten years' imprisonment" and that the crime had not only a maximum penalty, but also a minimum penalty. Petitioner also stated at his plea hearing that he had discussed the Government's April 4, 2016, *Pimentel* letter with his counsel. *See United States v. Pimentel*, 932 F.2d 1029, 1034 (2d Cir. 1991). This letter states the Government's view that the Guidelines recommended a sentence of imprisonment from 360 months to life, with a mandatory minimum of 120 months. Petitioner nevertheless chose to move forward with his plea.

All four *Chhabra* factors further support a finding that Petitioner has not established prejudice. First, he pleaded guilty despite warnings that no one could predict what his sentence would be, and "even if your sentence is different from what your attorney or anyone else told you it might be or if it's different from what you expect, once you've pleaded guilty, you will not be allowed to withdraw your plea; it will be final." Second, by pleading guilty, Petitioner

gained a benefit in the form of the Court's consideration of his acceptance of responsibility, and the Guidelines' three-level offense level reduction for acceptance of responsibility. *Lobo*, 2017 WL 2838187, at *5. Third, Petitioner has not "advanced any basis for doubting the strength of the government's case against him." And fourth, if Petitioner had proceeded to trial, the Government could have prosecuted him for firearms crimes under 18 U.S.C. §§ 924(c) and 924(o), consistent with Mr. Rivera's testimony at the *Fatico* hearing. *See Chhabra*, 720 F.3d at 408. Based on the record, the Petition's third ground for the claim of ineffective assistance of counsel -- that defense counsel misled Petitioner about his possible sentence -- is rejected.

### 4. Failure to Obtain Discovery

The Petition asserts that defense counsel was ineffective for failing to obtain certain discovery related to the May 2017 OIG Report. This claim fails on the deficient performance prong because counsel *did* seek discovery related to the OIG Report. The OIG Report was issued in May 2017, and a redacted copy of it is publicly available on the Internet. On July 24, 2017, defense counsel sent the Government a discovery demand related to the OIG Report, and on July 26, 2017, defense counsel filed a motion to compel and a motion to adjourn Petitioner's sentencing. Also on July 26, the Government opposed those motions and confirmed that it had complied with its discovery obligations. The next day, defense counsel filed a reply in support of the motion. The Court convened a conference to discuss the motion on July 31, 2017. Upon hearing the parties' positions, the Court determined that Petitioner was not entitled to the requested information based on the Government's description of the incidents and investigative agents that are the subject of the report, and explanation that neither the incidents nor agents had anything to do with the prosecution of Petitioner, Mr. Rivera (the Government's witness at the *Fatico* hearing) or the Cachiros. Accordingly, the Court denied the request.

### B. The *Mens Rea* Requirement for Petitioner's Offense of Conviction

The Petition asserts that Petitioner was denied due process because he was not charged with -- and did not plead guilty to -- having the requisite *mens rea* as to the specific type and amount of drugs involved in the offense for which he was convicted.

Petitioner did not raise this argument in his direct appeal, which was decided in 2018. *Romero*, 749 F. App'x 31. "In general, a [petitioner] is barred from collaterally challenging a conviction under § 2255 on a ground that he failed to raise on direct appeal. An exception applies, however, if the [petitioner] establishes (1) cause for the procedural default and ensuing prejudice or (2) actual innocence." *United States v. Thorn*, 659 F.3d 227, 231 (2d Cir. 2011) (citation omitted); *accord Gupta v. United States*, 913 F.3d 81, 84 (2d Cir. 2019). Petitioner argues that the Supreme Court's 2019 decision in *Rehaif* is a "subsequent legal development[]" that constitutes good cause for his procedural default, because this argument had not been "reasonably available" on direct appeal. *Thorn*, 659 F.3d at 233; *accord Gupta*, 913 F.3d at 84-85. Even assuming Petitioner had established good cause, this ground for the Petition is denied because the constitutional argument is meritless under Second Circuit law, and *Rehaif* did not change that. Petitioner therefore cannot establish a legal error, much less the level of prejudice required to collaterally attack his conviction. *United States v. Frady*, 456 U.S. 153, 166, 170, 175 (1982) (holding that this is a "significantly higher hurdle than would exist on direct appeal" and requires "not merely that the errors at [Petitioner's] trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage" such that they "overcome society's justified interests in the finality of criminal judgments"); *accord Olsen v. Doldo*, No. 16 Civ. 5366, 2020 WL 685707, at *17 (S.D.N.Y. Jan. 2, 2020).

### 1. The Offense of Which Petitioner Was Convicted

Petitioner was charged with and pleaded guilty to conspiracy to import, manufacture and distribute a controlled substance in violation of 21 U.S.C. sections 963, 952(a), 959(a) and 960(a)(1) and (3). With exceptions not relevant here, § 952(a) generally provides that, "[i]t shall be unlawful to import into [the U.S.] any controlled substance." Section 960(a)(1) provides that, "[a]ny person who . . . contrary to [§ 952] knowingly or intentionally imports or exports a controlled substance . . . shall be punished as provided in" § 960(b). Similarly, § 959(a) provides that, "[i]t shall be unlawful for any person to manufacture or distribute a controlled substance . . . intending, knowing, or having reasonable cause to believe that such substance or chemical will be unlawfully imported into the United States." Section 960(a)(3) provides "[a]ny person who . . . contrary to [§ 959] manufactures, possesses with intent to distribute, or distributes a controlled substance . . . shall be punished as provided in" § 960(b).

Section 960(b) contains a schedule of penalties that correspond to the specific type and amount of drugs involved in the underlying violation. For offenses involving five kilograms or more of cocaine, the authorized terms of imprisonment start at a minimum of ten years to a maximum of life in prison, if no other enhancements in the statute apply. § 960(b)(1)(B)(ii). For offenses involving different types and amounts of drugs, including smaller amounts of cocaine, the minimum and maximum penalties may be lower. *See* § 960(b)(2).

Petitioner was charged with, and pleaded guilty to, offenses involving five kilograms or more of cocaine. The indictment charged, and Petitioner pleaded guilty to, "intentionally and knowingly" conspiring to violate the provisions above, but the charge and plea did not specify that Defendant acted "knowingly" with respect to the type and amount of drugs involved. That is consistent with the Second Circuit's holding that "the government need not prove *scienter* as to drug *type* or *quantity* when a defendant personally and directly participates in a drug

13

transaction underlying a conspiracy charge." *United States v. Andino*, 627 F.3d 41, 47 (2d Cir. 2010).² Neither *Rehaif* nor any other recent legal development undermines that holding. Therefore, Petitioner's argument that the imposition of his sentence violated his right to due process -- either because the indictment and guilty plea were deficient or because the statutes under which he was convicted are unconstitutional -- is meritless.

### 2. *Rehaif v. United States*

*Rehaif* addressed a different statutory scheme, and, contrary to Petitioner's argument, nothing about its reasoning applies to the statutes under which Petitioner was convicted. *Rehaif* dealt with 18 U.S.C. § 922 and § 924. Section 922(g) makes it unlawful for certain individuals to possess or transport in interstate commerce a firearm or ammunition, and § 924 provides for criminal penalties for those who "knowingly violate[]" § 922(g). In *Rehaif*, the Supreme Court held that, "in a prosecution under" those statutes, "the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." 139 S. Ct. at 2200. The Court held that the *mens rea* requirement extended to both the "conduct" element of § 922(g) (possession or transportation) and the "status" element (membership in an enumerated group). *Id*. at 2197. The Court reasoned, in part, that *mens rea* was required as to status because "the defendant's status is the 'crucial element' separating innocent from wrongful conduct." *Id.* The Court relied on the

---

² *Andino* specifically addressed 21 U.S.C. § 841, which is distinct from but analogous to 21 U.S.C. § 960 for all relevant purposes. Subsection 841(a) states that "it shall be unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." Subsection (b) lists different penalties based on the amounts and types of controlled substances involved. Petitioner was charged under § 960 and not § 841, but the Petition addresses § 841, and the Government treats the case law on § 841 as "instructive" with respect to § 960. It is worth noting, however, that unlike § 841, one of the two relevant categories of offenses addressed in § 960(a) does not contain an express scienter element at all.

14

"longstanding presumption, traceable to the common law, that Congress intends to require a defendant to possess a culpable mental state regarding 'each of the statutory elements that criminalize otherwise innocent conduct.'" *Id.* at 2195.  The Court also found no basis in the structure of the statutes to find that the "knowingly" *mens rea* element applies to one of the (non-jurisdictional) elements of § 922(g) but not the other -- conduct but not status -- particularly because the status element appears earlier in the sentence and is thus closer to the *mens rea* element.

*Rehaif* is inapposite to the analysis of 21 U.S.C. § 960(a) and (b).  Unlike the possession of firearms, the possession of drugs is not "otherwise innocent conduct," and the specific amount and type of drugs does not "separate[e] innocent from wrongful conduct."  *Id.* at 2195, 2197; *see also United States v. King*, 345 F.3d 149, 153 (2d Cir. 2003) (declining to "impute a *mens rea* requirement into a criminal statute (or apply the *mens rea* from one portion of a criminal statute to another)" because, in the context of § 841(b), there was "no risk that . . . apparently innocent conduct will be criminalized").  There is thus no presumption to justify reading a *mens rea* requirement into a statute where Congress has not included one.  The structure of § 960 also provides no reason to think that the adverbs "knowingly" and "intentionally" in § 960(a) modify the drug amounts and types listed in § 960(b).  In *Rehaif*, the Court held that the word "knowingly" in the phrase "knowingly violates [§ 922(g)]" applied to each non-jurisdictional element of § 922(g).  Similarly, in the context of § 960(a), "knowingly" and "intentionally" modify each element of the crime stated later in the same sentence, but their role ends there.  One has committed the crime defined by § 960(a) if one has "knowingly or intentionally" engaged in specified conduct involving "a controlled substance" -- any controlled substance, in any amount.  There is no basis for assuming that Congress meant to apply those scienter terms to other

15

sentences or statutory subsections. *See, e.g.*, *United States v. Collazo*, 984 F.3d 1308, 1329 & n.21 (9th Cir. 2021) (reaffirming the decisions of "every other circuit to consider this issue," including the Second Circuit in *Andino*, that "§ 841(b)(1) does not require a finding of a defendant's mens rea with respect to the drug type and quantity" and distinguishing *Rehaif* on similar grounds).

Petitioner also argues that *Alleyne v. United States*, 570 U.S. 99 (2013), requires a different result than the Second Circuit reached in *Andino*. Because *Alleyne* was decided in 2013, Petitioner could have raised this argument on direct appeal, and it is procedurally barred. But it is meritless in any event. In *Alleyne*, the Supreme Court held that "[a]ny fact that, by law, increases the penalty for a crime," including a mandatory minimum, "is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." *Id.* at 103. The Court previously had held, in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), that any fact that increased the *maximum* penalty for a crime must be charged and proven beyond a reasonable doubt. *Id.* at 490. *Alleyne* simply extended the holding of *Apprendi* to mandatory minimums. 570 U.S. at 103. The Second Circuit in *King* rejected the argument that *Apprendi* required a new interpretation of § 841(b), *King*, 345 F.3d at 152-53, and the same reasoning applies to *Alleyne*.

Both *Alleyne* and *Apprendi* are irrelevant to the issue presented here. There is no dispute that the amount and type of drugs is an "element" that must be proven under *Alleyne* and *Apprendi*. Consistent with those cases, the Indictment here charges the amount and type of drugs, and Petitioner admitted to the amount and type of drugs in his guilty plea. However, as *Andino* held, Petitioner's state of mind about the amount or type of drugs is not an element of the crime, and neither *Rehaif* nor *Alleyne* changed that. *See Andino*, 627 F.3d at 47; *DeJesus v. United States*, No. 14 Civ. 2366, 2017 WL 6343678, at *3 (S.D.N.Y. Dec. 11, 2017) (holding

*Alleyne* did not change the rule announced in *Andino*); *United States v. Brathwaite*, 847 F. App'x 58, 60-61 (2d Cir. 2021) (summary order) (same). Because Petitioner has not established legal error based on *Rehaif*, habeas relief on this ground is denied.

### C. Petitioner's Request for an Evidentiary Hearing

Petitioner requests an evidentiary hearing on the Petition's third ground for relief, allegedly inaccurate advice from defense counsel about Petitioner's exposure at sentencing. An evidentiary hearing is unnecessary here because "the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). *Rosa v. United States*, 170 F. Supp. 2d 388, 398 (S.D.N.Y. 2001) (noting that a hearing is unnecessary "where (1) the allegations of the motion, accepted as true, would not entitle the petitioner to relief[,] or (2) the documentary record . . . render[s] a testimonial hearing unnecessary" (citing *Chang v. United States*, 250 F.3d 79, 85-86 (2d Cir. 2001))). As explained above, even assuming the truth of Petitioner's claims that his counsel misstated the maximum, minimum or likely sentence, the record makes clear that Petitioner would not be entitled to relief because he could not show that he suffered prejudice. Therefore, a hearing is not required and would not be useful.

Petitioner correctly does not request a hearing on any of the other grounds for relief in the Petition. A hearing is unnecessary because these grounds are legally incorrect and do not depend on the resolution of a disputed factual issue. And the Petition's fourth ground, that Petitioner's counsel failed to seek certain discovery, is not subject to dispute because it is directly contrary to "the files and the records of the case." 28 U.S.C. § 2255(b).

### IV. CONCLUSION

For the reasons discussed above, the Petition is denied, and the motion for an evidentiary hearing is denied.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a Certificate of Appealability will not be issued. *See* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111-12 (2d Cir. 2000). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this judgment on the merits would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438, 445 (1962) ("We consider a defendant's good faith . . . demonstrated when he seeks appellate review of any issue not frivolous.").

The Clerk of Court is respectfully directed (1) in the criminal case, 15 Crim. 174-1, to close the motion at Dkt. No. 393 and (2) in the civil case, 19 Civ. 9982, to close the motion at Dkt. No. 15, enter judgment in favor of Respondent and close the case.

Dated: February 9, 2023
      New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

18